ELLIS, Judge.
The defendant has appealed from a judgment awarding the plaintiff the maximum amount of weekly compensation beginning June 6, 1959 for the duration of his disability not to exceed 400 weeks with interest at the rate of 5% per annum on each past due installment from its due date until paid, subject to the compensation credit for payments made during the period from June 6, 1959 to July 19th, 1959, with a lump sum payment of all accrued amounts with interest from the due date of each installment.
There is no dispute as to the occurrence of the accident and the hernia resulting therefrom on May 29th, 1959 while the plaintiff was in the employ of the defendant’s insured, W. S. James Construction Company, for which plaintiff on June 3, 1959 submitted to an operation for the repair of the hernia in the right inguinal region by Dr. Leslie Hobgood of Baker, Louisiana.
Plaintiff’s cause of action is based upon the proposition that either the operation was not entirely successful and he was left with a small hernia or that he had a recurrence in the form of a small hernia in the right inguinal region and that he had suffered pain continously since the accident and the occurrence of the hernia therefrom and subsequent to the operation by Dr. Hob-good, and that he had been unable to perform the regular duties of a carpenter and had only succeeded in obtaining light work in order to support his family consisting of his wife and four children.
On the other hand, the defendant contends that the operation was successful and that if he had a recurrent hernia, which it denied, that it developed subsequent to the date of his discharge by Dr. Hobgood as being able to return to work and was not connected with the original accident while in defendant’s employ, nor was it the result of the operation.
On June 3, 1959 Dr. Hobgood performed an operation on the plaintiff to repair a right indirect inguinal hernia which he had suffered as the result of an accident while in the employ of defendant on May 29, 1959. Dr. Hobgood saw plaintiff after his discharge from the hospital on June 12, 1959 and on that date the sutures were removed and the incision was healing well and showed no evidence of complications or swelling of the scrotum or testicles. On July 13, 1959 Dr. Hobgood saw plaintiff for the last time as a routine check and on that date discharged him as fit to return to work on July 20, 1959, and again found no evidence of complications. Dr. Hobgood sometime later heard through an associate that plaintiff was supposed to have had a recurrence of the hernia and at his request the plaintiff was sent to see him and an examination was made on November 29th, 1960. Dr. Hobgood had heard nothing from the plaintiff between July 20, 1959 and *142 November 29th, 1960 -when he came to see the doctor at the latter’s request. The plaintiff at that time complained of soreness in the right inguinal region, which he stated was also felt in the testicle on that side and the pain and soreness was increased after heavy work and intercourse. Dr. Hobgood examined both inguinal regions, especially the right inguinal region in the area of the hernia repair, also the testicle and the scrotum on the right side and found no evidence of any recurrence by means of testing. He found the inguinal ring tight, no protrusion of any intestinal viscus through the opening on straining or coughing, nor any enlargement of the testicle on that side. All of the doctors agreed that the plaintiff did not impress them as being a malingerer -and that .they thought he was being truthful in relating his pain. Dr. Hobgood stated on cross examination that he did find a small increase in the scar tissue at the lateral, edge of the incision about pea-sized and that there was a possibility in hernia repairs that some of the nerve fibers might be caught up in the scar tissue as it heals and leave a residual pain which could be radiated in the lower part of the abdomen toward the midline or into the scrotum and testicles, that this was one of the aftermath complications of inguinal surgery. He also stated that it was medically feasible that a hernia would show up on one examination and not on another and explained this by stating: “ * * * in certain situations the opening through which the hernia is recurring might be rather small and the angle that the viscus of the abdomen has to protrude through might be rather acute, and it might have to lie in a particular position before a straining and so forth would make it evident. In other words, it — you could strain on certain occasions and it wouldn’t be present whereas on other occasions it would be. That is possible.” He stated that it was possible that plaintiff could have had a hernia and it didn’t show up on his examination. Dr. Hobgood was of the opinion that there was absolutely nothing wrong with the plaintiff at the time he- discharged him and that if he had a recurrent hernia it would have to be caused by some additional activity after the operation.
The plaintiff’s medical testimony consists of that of Dr. S. W. Pittman who made an examination of plaintiff on March 2, 1960 and definitely found a rather small hernia on the right side which he described as a recurrence of the hernia caused by the original accident. This doctor did testify when pressed on cross examination that if plaintiff had the proper repair and the tissues were good and strong then it would follow that he would have had to have a new strain to cause the recurrence of a hernia. However, his over-all testimony is to the effect that he thought that the hernia which he found on the date of the examination was a recurrence of the old hernia that went back to the original injury.
The defendant introduced a report of Dr. W. R. Schaffarzick who had practiced general and traumatic surgery in Baton Rouge, Louisiana. It was shown that this doctor had died subsequent to the rendition of his report but that the signature on the report was genuine. This report was objected'to, however, this court had an occasion to rule on this exact question in Cascio v. Standard Oil Co. of New Jersey, La.App., 32 So.2d 66, in which the court held:
“The evidence shows that the entries were made in the regular course of the business and in carrying out the duties of the employees who made the entries. They were made as a part of the system and custom of defendant’s method of transacting business. See 20 Am.Jur. Section 1062 page 908. The medical report of Dr. Furrh was identified by Dr. Allen who recognized the initials placed on the report in the handwriting of Dr. Furrh who died before the case was tried. This report was made by the deceased doctor in the discharge of his professional duties and was admis *143 sible in evidence. 20 Ám.Jur. p. 887, Section 1047. Moreover, subsection 4 of Section 18 of Act No. 20 of 1914, as amended by Act No. 85 of .1926, provides that the judge shall not be bound by technical rules of evidence in, compensation cases, although it is further provided that all findings of fact must be based on competent evidence.”
Dr. Schaffarzick stated in his report that as a result of an examination of the plaintiff he found “a well healed four inch scar in the right inguinal region and I do believe that he has a small reoccurrence of this inguinal hernia in the medial aspect. The examination of the genitalia on that side are entirely normal and I find no evidence of a hernia on the left side.” This doctor went on to state:
“In view of the fact that this man does appear to have a small reoccur-rence following ¿ hernia repair on the right, (sic) I feel that he does deserve another attempt to fix it surgically. I do not consider this to be of an emergency nature as long as the patient understands that he does have a chance of incarceration or strangulation and will present himself if this situation does occur.”
Dr. Kenneth Williams also testified on behalf of the plaintiff as a result of an examination of the latter and was of the opinion that he had a recurrence of a hernia on the right side, “and possibly some pain due to this dilation of the inguinal ring due to scar tissue following the operation * * *.” He further stated:
“I would say probably since he had had a repair and the doctor didn’t tell him about any damage when he repaired the damage, I would say it is possibly a recurrence, although it is hard to tell about that. It is hard to tell what type he has now. If it is indirect it is probably a reoccurrence, if it is a direct hernia it could be a new hernia but it is very hard to tell and I would say he has probably got an indirect hernia which would be a reoccurrence.”
Dr. Williams thought that he needed expert medical attention on this hernia and recommended that he go to a general sur7 geon to get it repaired.
The District Court found that the preponderance of the testimony supported the plaintiff’s contention. In addition, plaintiff testified that he had had pain since the occurrence of the accident and subsequent to the operation and his discharge and that he had told Dr. Hobgood prior to his discharge that he had pain. Dr. Hobgood discharged plaintiff as able to return to light work and he returned to his employer who told him they had no light work. It is shown that approximately three months after his discharge he went back to work and worked for a number of various employers as a carpenter but he testified that in all of these endeavors he did light work and his testimony as to working with pain and his inability to do the usual heavy carpentry work is corroborated. There are some discrepancies in his testimony which wo do not think are so serious as to affect the preponderance of the testimony in plaintiff’s favor.
The defendants had some moving pictures taken by a private detective without the knowledge of the plaintiff and they show him carrying a ladder, a number of small steel rods, and shaking a concrete hopper mixer. The defendants argue that the plaintiff denied having carried the objects which the pictures show him to have actually done. The pictures covered a very short part of his daily work time and it is possible that he had forgotten having done the things which formed a small part of his day’s work as revealed by the moving pictures.
From a review of the record we do not find that the judgment of the District Court was obviously or manifestly erroneous and it is hereby affirmed.
Affirmed.