434 So.2d 723 (1983)
HERCULES, INC.
v.
R.J. WALTERS.
No. 53724.
Supreme Court of Mississippi.
July 13, 1983.
*724 Lawrence C. Gunn, Jr., Aultman & Aultman, Hattiesburg, for appellant.
Elliott Andalman, Andalman, Adelman & Steiner, Hattiesburg, for appellee.
Before ROY NOBLE LEE, BOWLING and PRATHER, JJ., and SUGG, Retired Justice.
SUGG, Retired Justice, for the Court:[1]
The principal issue in this case is whether the report of a deceased physician is competent evidence in a Workmen's Compensation case. The Commission and the Administrative Judge held the report was admissible, but the Circuit Court of Forrest County reversed holding the report was inadmissible. We agree with the Commission, hold the report was properly admitted in evidence, and reverse and render.
Walters was employed by Hercules in 1945 and was injured on December 19, 1951, when he tripped and fell. His left hand struck the ground and turned backwards. He was treated by Dr. T.E. Ross, the company physician, at 10:30 a.m. at the Methodist Hospital Clinic in Hattiesburg. Dr. Ross filed a surgeon's preliminary report in duplicate with one copy being retained at the Hattiesburg Plant of Hercules and the other copy being filed at the home office. Dr. Ross described the injuries in his report as follows:
"Sprain of left wrist. History of injury to wrist nine years ago. X-ray shows old fracture of navicular bone and a deformity of lunate bone."
The report also reveals that Dr. Ross immobilized the wrist on a short plaster splint and returned Walters to light duty. Dr. Ross died three or four years before the hearing.
Dr. Ross' final report showed that he rendered first aid to Walters on December 19, 1951, with office visits on December 28, 1951, January 9 and 15, 1952. The report also showed that Walters was discharged with no disability.
Mrs. Margaret Cargill testified for Hercules. She stated that she retired on January 1, 1966, after working for Hercules for a period of thirty-three years as a nurse. *725 She also worked for Dr. Ross in the afternoons after she got off from work at Hercules. She was personally acquainted with Walters and described him as a good friend. She remembered carrying Walters from Hercules to the hospital where he was examined by Dr. Ross and heard Walters tell Dr. Ross he had broken his wrist several years before he started working for Hercules.
The assistant director at the Methodist Hospital testified that he searched the hospital records for an emergency room examination at the Methodist Hospital Clinic in December 1951 for a patient by the name of Robert J. Walters, but did not find the records, because no records of the hospital were available prior to the last half of 1958.
Gerardus H. Hundscheid, safety inspector at Hercules in charge of workmen's compensation claims, stated that Walters came to see him in 1976 and told him he wanted to retire and desired to have his wrist checked before he retired. Hundscheid set up an appointment for Walters with Dr. William G. Giles, an orthopedic surgeon.
Walters first saw Dr. Giles on March 30, 1976, at which time Dr. Giles discovered a mass on Walters' left wrist and diagnosed Walters as having severe degenerative arthritis. Dr. Giles next saw Walters on August 27, 1976, when Walters came to him complaining of pain and swelling in his left wrist and gave a history of an old fracture of the left wrist. Dr. Giles' x-rays on both occasions showed a previous fracture and he recommended that surgery might be of some benefit to him. Dr. Giles performed surgery, excised the radial styloid and the proximal fragment of the navicular. He also removed a portion of the distal radius and some arthritic spurs which were present in the area.
Dr. Giles was shown the report of Dr. Ross and stated, if all the information contained in Dr. Ross' report was true, Walters' problem with his wrist was a result of a fracture of the wrist sustained nine years before December 1951 and not from a sprain. His opinion was that Walters' problems with his wrist resulted from a fracture, not a sprain.
Walters testified that the initial injury to his wrist occurred in 1951 when he tripped and fell and he had not broken his arm before 1951. Walters also testified that he was receiving Social Security Disability, and that he claimed disability because of hypoglycemia, which caused dizziness, extreme hunger, and sweating.
Walters testified that his wrist had bothered him since his fall in 1951 and that his hypoglycemia was first diagnosed in 1972.
Hercules filed a final report and settlement receipt with the Workmen's Compensation Commission on July 20, 1978. The report showed that it had paid Walters $4,200 compensation for 25 percent loss of the use of the left wrist, $300 for temporary total disability, and medical, hospital and other expenses in the amount of $1,692.93. Walters filed a motion to controvert on February 7, 1979, and the evidence set forth above was adduced at the hearing on the motion to controvert.
The administrative judge denied Walters' claim holding that his current medical problem with his wrist was due to an old fracture which occurred before Walters' employment with Hercules. This order was affirmed by the full Commission and Walters appealed to the Circuit Court of Forrest County which held that it was error to admit the report of Dr. Ross into evidence as hearsay, and for the additional reason that the report of Dr. Ross was inadmissible because it was neither reliable or trustworthy.
The circuit court based its decision in part on Georgia-Pacific Corporation v. McLaurin, 370 So.2d 1359 (Miss. 1979), where we held that medical reports consisting of letters written by a physician to the claimant's attorney were not admissible in evidence. Georgia Pacific has no application to the case at bar and is distinguishable because, in Georgia Pacific, the physician was alive and could have been available for cross examination; however, in this case the physician was dead at the time of the hearing, *726 and of course, unavailable for cross examination.
This is a case of first impression in this state. Initially, we note that our workmen's compensation law provides that the Workmen's Compensation Commission is not bound "by common law or statutory rules of evidence ... but ... may conduct such hearing in such manner as best to ascertain the rights of the parties." Section 71-3-55, Mississippi Code Annotated (1972) provides in part the following:
(1) In making an investigation or inquiry or conducting a hearing, the commission shall not be bound by common law or statutory rules of evidence or by technical or formal rules or procedure, except as provided by this chapter, but may make such investigation or inquiry or conduct such hearing in such manner as best to ascertain the rights of the parties. Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made or the hearing conducted shall be received in evidence and shall, if corroborated by other evidence, be sufficient to establish the injury.
The general rule for admission of evidence as an exception to the exclusionary rule is stated succinctly in 29 Am.Jur.2d Evidence § 496 as follows:
While the hearsay rule has been asserted and applied so often that it is not questioned, it seems safe to assert that the courts have generally been willing to relax the rule in the interest of justice. As with most rules, the hearsay rule is not absolute; it is replete with exceptions. Indeed, it has been said that exceptions to the hearsay rule have virtually swallowed the rule.
The two underlying reasons for any exception to the hearsay rule are a necessity for the exception and a circumstantial guaranty of the trustworthiness of the offered evidence  that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross-examination by the party against whom the hearsay is offered. The word "necessity" as thus used is not to be interpreted as uniformly demanding a showing of total inaccessibility of first-hand evidence as a condition precedent to the acceptance of a particular piece of hearsay, but necessity exists where otherwise great practical inconvenience would be experienced in making the desired proof. An exception to the hearsay rule may be made where the hearsay evidence is the only possible proof, as where a sole witness to a transaction is dead or beyond the reach of a subpoena.[2] However, the mere fact that a witness is dead does not render his declarations admissible, although, if in addition to the death of a witness there are circumstances which attribute verity to his declarations, the hearsay rule may be relaxed to permit the admission of such declaration.
The State of Louisiana permits reports of deceased physicians to be admitted in evidence as an exception of the hearsay rule in workmen's compensation cases. Cascio v. Standard Oil Co. of New Jersey, 32 So.2d 66 (La. Ct. App. 1947), held that the report of an examination made by a doctor who had died at the time of the hearing was admissible in evidence. In that case Dr. Furrh examined plaintiff in February 1945, more than five months after plaintiff claims to have received a hernia and the report of Dr. Furrh showed that plaintiff did not have a hernia at that time. Objection to the admission of the report was made by counsel for plaintiff, but the Louisiana Court held:
The evidence shows that the entries were made in the regular course of the business and in carrying out the duties of the employees who made the entries. They were made as a part of the system and custom of defendant's method of transacting business. Se 20 Am.Jur. Section 1062, page 908. The medical report *727 of Dr. Furrh was identified by Dr. Allen who recognized the initials placed on the report in the handwriting of Dr. Furrh who died before the case was tried. This report was made by the deceased doctor in the discharge of his professional duties and was admissible in evidence. 20 Am. Jur. p. 887, Section 1047. Moreover, subsection 4 of Section 18 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, provides that the judge shall not be bound by technical rules of evidence in compensation cases, although it is further provided that all findings of fact must be based on competent evidence. (Emphasis added) (32 So.2d at 68).
The Louisiana Court has consistently followed the rule in Cascio. Beasley v. Service Foundry Division of Avondale Shipyards, Inc., 235 So.2d 139 (La. Ct. App. 1970); Dobard v. R. Theriot Liquor Stores, Inc., 195 So.2d 350 (La. Ct. App. 1967); Harrell v. Hardware Mutual Casualty Co., 143 So.2d 140 (La. Ct. App. 1962); Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La. Ct. App. 1960). See also: Cristofaro v. State Accident Ins. Fund, 19 Or. App. 272, 527 P.2d 412 (Or. Ct. App. 1974).
The two underlying reasons for any exception to the hearsay rule are: (1) a necessity for the exception, and (2) a circumstantial guaranty of the trustworthiness of the offered evidence.
The first reason for an exception to the hearsay rule exists because Dr. Ross died before the hearing and the 1951 medical records of the Methodist Hospital are not available. The only method by which the contents of the report and the result of the December 1951 x-ray could be proved was by admitting the report in evidence.
Several reasons support the circumstantial guaranty that the report of Dr. Ross was trustworthy and reliable. Hercules offered the testimony of Mrs. Cargill, who was not only first aid nurse for Hercules in 1951, but also Dr. Ross' personal nurse as well. She knew Walters well, remembered the specific occasion when she carried Walters from Hercules to the Methodist Hospital Clinic, remembered hearing Walters state he had broken his wrist several years before he was employed by Hercules, identified Dr. Ross' signature on the report, and identified the daily first aid record on the date Walters came to the first aid station. On the issue of whether Dr. Ross verified the information on the report, she testified "Dr. Ross never signed a blank piece of paper for anybody. He signed it after it was filled out."
Furthermore, the report was kept as a business record in the personnel file of Walters at Hercules and thus falls within the well-established rule that business records may be admitted when kept in due course of a business. King v. Murdock Acceptance Corp., 222 So.2d 393 (Miss. 1969).
We hold that the report of Dr. Ross was competent evidence as an exception to the hearsay rule. Adoption of an exception to the hearsay rule in Workmen's Compensation cases will enable the Commission to conduct hearings in a manner consistent with the stated purpose of the act which is "to ascertain the rights of the parties." The rule will apply to a claimant and his employer with equal force. It will enable a claimant to support his claim by the report of a deceased physician; it will also enable an employer to defeat a claim. However, the report of a deceased physician before being admitted in evidence must meet the two-pronged test: namely, there must be a necessity for the exception, and there must be a circumstantial guaranty of the trustworthiness of the offered evidence.
For the reasons stated, we hold the report was properly received in evidence by the administrative judge and the commission as an exception to the hearsay rule. We therefore reverse and render.
The above is adopted as the opinion of the Court.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Sitting pursuant to Mississippi Code Annotated Section 9-3-6 (Supp. 1982). The above opinion is adopted as the opinion of the Court.
[2] The preceding sentence was quoted with approval in State Farm Fire and Casualty Co. v. Magee, 368 So.2d 230 (Miss. 1979).