474 So.2d 584 (1985)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
Frances W. ADEN.
No. 54878.
Supreme Court of Mississippi.
August 7, 1985.
*586 Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellant.
Alan W. Carter, Jim Upshaw, Greenwood, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This workers' compensation appeal marks the culmination of a seven year (though oft delayed) battle between a former directory assistance operator and her former employer, South Central Bell Telephone Company. Employer has  vigorously and unsuccessfully  contested everything claimant has alleged, from the fact of injury at all, to the issue of work-connectedness, to claimant's entitlement to penalties provided by the Mississippi Workers Compensation Act. That employer has had its day in court and taken full advantage thereof no one can doubt.
We have carefully considered and sifted each point employer raises, and notwithstanding employer's firm and wholly undisguised conviction that claimant is a malingerer, we affirm. As we explain more fully below, there is in the record before us substantial evidence supporting the Mississippi Workers' Compensation Commission's findings (a) that claimant suffered an accidental injury, (b) that this injury arose out of and in the course of her employment, and (c) that as a result of this injury claimant is permanently totally disabled. Further, there is no credible evidence that claimant's disability has been caused by any preexisting handicap, disease and lesion, and, accordingly, the Circuit Court correctly reversed so much of the Commission's finding that fifty percent of claimant's disability should be apportioned thereto. We further find that claimant was entitled to medical expenses and penalties. The judgment of the Circuit Court is affirmed.

II.

A.
On May 12, 1978, Frances W. Aden was a 39-year-old female with a high school education and at that time a nineteen year veteran employee of South Central Bell Telephone Company. On that date she sustained an injury on the job which has rendered her permanently occupationally disabled.
Claimant was a directory assistance operator for the telephone company in Greenwood, *587 Mississippi. She was required to sit in an elevated swivel chair in front of a circuit panel which extended to a height a little above her head. At claimant's station was a Simplex machine, a device for timing long distance calls. When a 3" X 5" card is placed in the machine and pushed, a record is made of the length of the call. On the occasion in question claimant was in the process of connecting a long distance call with her left hand while disconnecting another call with her right hand and stamping the card for that call in the Simplex machine. This was between 7:00 a.m. and 9:00 a.m. on May 12, 1978. When she pushed the card into the Simplex machine, she felt a sharp pain in her low back and legs.
Although she experienced pain, claimant did not report this incident to anyone but continued working. Claimant testified that shortly the pain subsided somewhat, and she was able to finish her work on that shift. She endured the pain and continued to work a regular shift for the next three days. However, the severity of her pain gradually increased until, on May 17, 1978, claimant informed Ruth Ballou, one of her supervisors, of her injury to her back, her inability to work and her need for medical attention.
Claimant testified that she telephoned Dr. Milton Person's office in Greenwood on May 16, but Dr. Person was unavailable. She then contacted her family physician, Dr. Julius L. Levy of Clarksdale, and secured an appointment with Dr. Levy on Wednesday, May 17. Thereafter, claimant kept appointments with Dr. Levy on May 17, May 31, June 6, June 16, August 8, August 16 and September 11, 1978.
On June 16, 1978, Dr. Levy referred claimant to Dr. H. Nelson Hamilton, an orthopaedic surgeon of Greenville, Mississippi, who admitted her to King's Daughters Hospital in Greenville from June 29 until July 20, 1978, and from September 18 until October 7, 1978. Dr. Hamilton referred claimant to Dr. C.D. Hawkes, a neurosurgeon practicing in Memphis, Tennessee, who hospitalized her at Methodist Hospital in Memphis from December 12, until December 21, 1978. During these hospitalizations, claimant underwent two myelograms and electronerve studies. In March, 1979, Dr. Hamilton readmitted claimant to King's Daughters Hospital for one week and performed a discogram. Dr. Hamilton died in August, 1979, and his nurse referred her to a Dr. Whitmore in Memphis. Claimant went to Dr. Whitmore on one occasion in September, 1979. On November 5, 1979, claimant sought medical attention from Dr. Raymond Browning, a general surgeon of Greenwood, Mississippi. Dr. Browning has treated claimant since November, 1979. Claimant has not worked since May 15, 1978.
Claimant testified she sought medical attention on her own because employer did not offer to provide medical treatment and did not object to Dr. Levy. When questioned concerning her delay in reporting the accident, claimant testified she was apprehensive about reporting her injury because her supervisor had previously informed her she would be suspended if she missed time from work. Claimant had previously hurt her back while working for the telephone company in 1974. Due to that injury, she was off work four days. Her treating physician at that time was Dr. S.R. Evans of Greenwood. She was also examined on that occasion by employer's physician, Dr. Buford Yerger, of Jackson.
Claimant also testified that prior to her work-related injury of May, 1978, she suffered from numerous physical illnesses including emphysema, arthritis, bursitis, hemorrhoids, tuberculosis and a spasmodic colon. She also previously had a hysterectomy and a coccygectomy.
Dr. Julius L. Levy testified he first examined claimant for complaints of pain and tenderness in the back and lower extremities on Wednesday, May 17, 1978  five days after her accidental injury. On that date claimant related a history of having injured her back while reaching at work on Friday, May 12, 1978. Dr. Levy testified claimant exhibited limitation of movement, and straight leg raising test was positive. *588 Dr. Levy also noted muscle spasms and numbness in the right leg. X-rays shows narrowing between the L1 and L2 and between the L2 and L3. Dr. Levy diagnosed disc space narrowing between the first and second lumbar vertebrae and between the second and third lumbar vertebrae, spasms of the back muscles and stress syndrome.
Dr. Levy causally related claimant's back condition to her injury while at work the preceding week. He prescribed medication and recommended bed rest. Claimant returned to Dr. Levy on May 29, 1978. On that date, Dr. Levy applied ultrasonic treatment to claimant's back and referred her to Dr. Hamilton in Greenville. Dr. Levy continued to treat claimant until September 11, 1978. X-rays taken on September 11, 1978, revealed narrowing between the L4 and L5 in addition to narrowing between the L1 and L2 and between the L2 and L3.
Dr. Raymond Browning testified he has treated claimant since 1973 for various conditions including arthritis, lupus erythematosus, pulmonary emphysema and nervousness. He stated claimant reported to him on November 5, 1979, almost 18 months after her accident. When Dr. Browning first saw her, claimant was complaining of pain in her low back and left lower extremity. Dr. Browning recorded a history consistent with claimant's testimony concerning her injury at work and subsequent medical treatment. During physical examination, claimant exhibited tenderness in the entire lumbar area of the spine and numbness over the lateral aspect of the left lower extremity. Straight leg raising test on the left was positive. Dr. Browning diagnosed claimant's discomfort and disability as resulting from pressure on the sciatic nerve probably due to a ruptured lumbar intervertebral disc. He causally related claimant's condition to her injury at work on May 12, 1978.
Dr. Browning said that claimant first sought medical treatment from him shortly after Dr. Hamilton's death, and she brought with her records from Dr. Hamilton's office. He testified he examined those records, particularly diagnostic studies performed during claimant's hospitalizations since May 12, 1978, and, although he did not rely on the records in reaching his diagnosis, he interpreted these studies as reinforcing his diagnosis.
According to Dr. Browning, claimant was totally disabled from work when he first examined her for her back condition because even sitting for as long as thirty minutes would aggravate the pain in her low back and lower extremities. He said that he has seen claimant at monthly intervals since November, 1979, and, her condition has not improved. Dr. Browning testified further that, due to the duration of her disability, he considered claimant to be permanently disabled.
Dr. Buford Yerger, orthopaedic surgeon, examined claimant at employer's request on March 23, 1981, and recorded a history of claimant's injury at work on May 12, 1978. Dr. Yerger testified claimant appeared to be in no acute distress, and the results of her physical examination were normal. In Dr. Yerger's opinion claimant suffered no permanent impairment and was able to return to work on March 23, 1981.
Dr. Yerger also testified he had previously examined claimant in August, 1974. At that time he found claimant's physical examination was normal, but x-rays showed narrowing of the L5, S1 interspace.
Employer's Exhibit No. 5 consists of claimant's medical records from Methodist Hospital in Memphis, Tennessee. Claimant was hospitalized and treated in Methodist Hospital by Dr. C.D. Hawkes from December 12, to December 21, 1978. These records show a myelogram performed on December 5, 1978, but revealed no evidence of a herniated disc or other intraspinal pathology. No testimony from Dr. Hawkes appears in the record.

B.
Procedurally, this matter had its genesis on July 7, 1978, when claimant filed her motion to controvert with the Mississippi Workers' Compensation Commission. In *589 that motion claimant alleged that she had sustained an accidental injury to her low back arising out of and in the course of her employment as a telephone operator for her employer, South Central Bell Telephone Company. Then, as now, employer denied claimant had sustained any such injury.
Based on the evidence presented, the Administrative Judge found claimant sustained a compensable injury on May 12, 1978, which became disabling on May 16, 1978. He also found claimant had not reached maximum medical recovery and ordered employer to pay temporary total disability benefits from May 16, 1978, until such time as claimant attains maximum medical recovery. The Administrative Judge allowed employer credit for sums paid claimant under employer's Plan for Employees Pensions, Disability Benefits And Death Benefits.
Upon review,[1] the Mississippi Workers' Compensation Commission found that claimant had sustained an accidental injury arising out of and in the course of her employment with employer on May 12, 1978, that the injury had become disabling on May 16, 1978, and that employer had received proper notice of claimant's injury as required by Miss. Code Ann. § 71-3-35(1) (1972). The Commission further found that Frances W. Aden was permanently totally disabled, having attained maximum medical benefit on June 10, 1980.
The Commission thereafter ruled, however, that claimant experienced a preexisting physical handicap, disease or lesion which was a contributing factor to her disability, Miss. Code Ann. § 71-3-7 (1972), and proceeded to hold that her permanent total disability was fifty percent attributable to the injury of May 12, 1978, and fifty percent attributable to the preexisting condition, whereupon the Commission ordered apportionment of permanent disability benefits by reduction of the $91.00 per week which would ordinarily have been payable to $45.50 per week.
In due course employer perfected its appeal to the Circuit Court of Leflore County, Mississippi, and claimant followed with a cross-appeal, the timeliness of which is at issue here. In any event, on March 30, 1983, the Circuit Court entered its order reversing so much of the Commission's order as provided for a reduced, apportioned award and otherwise affirmed the order of the Commission, including that portion directing that employer pay the ten percent penalty as authorized under Miss. Code Ann. § 71-3-37(5) (1972).
Employer has timely perfected its appeal of the Order of the Circuit Court, and the matter is now ripe for full review in this Court.

III.
Employer's primary position is that claimant has not suffered a compensable injury. As stated in its brief, employer "denied, and still denies, that claimant sustained a low back injury which arose out of and in the course of her employment." The Commission, however, on August 23, 1982, found to the contrary and the Circuit Court has affirmed.
On this appeal, employer acknowledges that it is swimming upstream against our limited scope of appellate review, for we confront here a finding of fact made by an administrative agency charged in law with the responsibility of making such findings. Miss. Code Ann. § 71-3-47 (1972); Dunn, Mississippi Workmen's Compensation, § 284, 361-363 (3d ed. 1982). We do not sit as triers of facts; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of the fact; rather, our function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission. If there be such substantial credible evidence, we are without authority to disturb that which the Commission has found, even though that *590 evidence would not be sufficient to convince us were we the factfinders. Staple Cotton Services Association v. Russell, 399 So.2d 224, 228-29 (Miss. 1981); King & Heath Construction Co. v. Hester, 360 So.2d 692, 694 (Miss. 1978).
That employer might convince us that this is a doubtful case avails it nothing, for we have repeatedly stated that such doubts should be resolved in favor of a finding of compensability to the end that the beneficient purposes of the Worker's Compensation Act may be carried out. Barham v. Klumb Forest Products Center, Inc., 453 So.2d 1300, 1303-04 (Miss. 1984); Holman v. Standard Oil Co. of Kentucky, 242 Miss. 657, 667, 136 So.2d 591, 594 (1962).
Claimant testified that she sustained the injuries for which she seeks compensation between 7:00 and 9:00 a.m. on May 12, 1978. According to claimant, she disconnected a long distance telephone call with her left hand by replacing a cord into the circuit panel in front of her, then reaching to place a three inch by five inch card into a Simplex machine. When she pushed the card, she felt a sharp pain in her low back and legs. Claimant testified that, although she was in pain, she continued to work her regular shift for the next three days but by Tuesday, May 16, 1978, she was unable to report for work and on the next day she informed her supervisor of what had happened.
We have set forth the medical history of this claim in considerable detail at the outset of this opinion. Suffice it to say for the moment that Dr. Raymond Browning testified that claimant was permanently totally disabled and he causally related this condition to the injury claimant sustained at work on May 12, 1978. Dr. Julius Levy also testified that claimant's low back injury was work connected. The Commission, relying largely on Dr. Browning's testimony, found that claimant had sustained a compensable injury, that she had reached maximum medical recovery on or about June 10, 1980, and that her disability was both total and permanent.
Employer and its counsel appear convinced that claimant is a liar (regarding the occurrence of an injury on May 12, 1978) or a malingerer or both. As we appreciate its position, employer first says that claimant was not injured, has no disability, and, in a word, is well. Assuming arguendo that claimant has a disability, employer suggests that disability couldn't have been caused in the way claimant describes (and Dr. Browning and Dr. Levy seem to have accepted). Employer and its counsel can't bring themselves to accept that the kind of serious disabling condition found by Dr. Browning and, more importantly, by the Commission could be experienced as a result of the execution of such a routine procedure as claimant has described as having occurred on May 12, 1978. Employer seems to argue that the execution of such a procedure is so unlikely to cause disabling injury that we should find as a matter of law that in this case it didn't. The logic won't wash. We have had too much experience in and out of the compensation field with seemingly unstressful and untraumatic experiences producing painful and disabling back conditions to doubt that such phenomena do occur.
Again alternatively, employer argues that, if claimant has a disability such must have originated from a non-work connected source, for claimant did not report her injury until May 16, 1978, four days after it occurred. Employer implies that, if claimant had really been injured as she claims, she would not have been able to continue working on May 12 and complete regular shifts on May 13, 14 and 15. Therefore, whatever disability, if any, she may have must have been caused by something other than the incident of May 12, 1978.
Leaving aside the Commission's perfectly reasonable findings on the accidental injury and work connection issues, there is something offensive about Employer's use for purposes of this litigation of claimant's *591 failure to report her injury for four days.[2] The ethics of our society condemns bellyachers. Hypochondriacs are scorned. When a real American is hurt, he or she tries to tough it out. We admire the soldier, the athlete, the worker who endures injury without complaint. We are aware that this employer and all employers have policies requiring that workers report injuries immediately. We certainly do not question the reasonableness or necessity of such policies. Yet we put our heads in the sand if we fail to recognize that such a policy runs sharply counter to one of the most powerful positive ethical and psychosociological norms of our society.
If Frances Aden's condition had not worsened, if she had worked three or four days in pain and then had that pain gradually subside to the point where it no longer affected her, her employer and her peers would have applauded her failure to complain. Does employer seriously want us to believe that during the four days following May 12, 1978, Frances Aden was not hoping against hope that her injury was minor, that her pain and discomfort would be only temporary? Common sense empathy gives us to understand that on May 12, 1978, surely claimant had the doubts about the likelihood of the incident she described producing serious injury and disability, doubts no doubt similar to those employer presses upon us with such fervor. A normal person might well feel embarrassment to suggest serious injury from such an incident.
All of these considerations leave us unmoved by employer's efforts to persuade us to disturb the Commission's findings on the issues of "accidental injury" and "work connectedness" and "permanent disability". The unlikelihood of a rational person giving up a $221.00 a week job and enduring two myelograms, a discogram and all that this claimant had been through in order to beat South Central Bell out of $91.00 a week (which does not go on forever) similarly colors our thinking. More precisely, these are facts and circumstances reflected by the record, the reasonable inferences from which wholly support the findings made by the Commission.
Notwithstanding these notions, we have carefully considered employer's attack on the Commission's findings, the primary thrust of which is that the record contains insufficient medical testimony to undergird a finding of a compensable injury.
Employer points out that, before compensation is payable, a claimant must not only sustain an accidental injury but that there must be a disability resulting therefrom which is supported by medical findings. Miss. Code Ann. § 71-3-3(i) (Supp. 1984) provides:
(i) "Disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings.
Though medical findings are required, we do not insist upon a precise, complete and unequivocal medical explanation of just how the accident caused the injury which in turn caused claimant's disability; Myles v. Rockwell International, 445 So.2d 528, 536 (Miss. 1983); Reyer v. Pearl River Tung Co., 219 Miss. 211, 217, 68 So.2d 442, 444-45 (1953).
It is clear that the medical findings relied upon by the Commission were those of Dr. Browning. Employer would have us think that there is practically nothing about Dr. Browning's testimony that ought to be given credit.[3] We disagree. First, employer charges that Dr. Browning relied upon an erroneous history, to-wit: that Dr. Browning gave his opinion regarding the work connectedness of the injury on the assumption that claimant had stopped working on May 12, 1978, the day of the *592 accident, when in fact claimant had continued to work for three more days. The record reflects that counsel opposite never asked Dr. Browning whether the fact that Mrs. Aden worked for three days after the accident would change his opinion. Counsel for employer on cross-examination was merely content to nail down the fact that Dr. Browning was of the impression that claimant did not work after May 12 and let the matter drop there. Employer never explains why claimant's working for three days would be inconsistent with Dr. Browning's and the Commission's finding of permanent total disability, particularly in view of claimant's own and by no means incredible testimony that while trying to work for the next three days she was experiencing increasingly severe pain in her back.
Employer attacks Dr. Browning's opinion on the ground that he supposedly relied upon medical records obtained from other prior treating physicians, particularly Dr. Hamilton, Dr. Hawkes and Dr. Levy. As indicated above, Dr. Browning became claimant's primary treating physician upon the death of Dr. Hamilton in August of 1979. True, Dr. Browning did receive and study the medical records of these three prior treating physicians. A review of Dr. Browning's testimony in the record in this case, however, makes clear that the opinions he offered were based upon his own examination, evaluation, care and treatment of claimant. Not only do we regard employer's point here as almost specious, Dr. Browning would be subject to criticism and censure if he had not requested, received and studied the medical reports of prior treating physicians.[4] Dr. Browning stated that the records from the other physicians were consistent with and confirmed his diagnosis but the information contained in those records were in no way the basis of Dr. Browning's opinions. See Sipe v. Farmer, 398 So.2d 1325, 1330 (Miss. 1981); Dennis v. Prisock, 221 So.2d 706, 711 (Miss. 1969).
Employer then challenges Dr. Browning's right to relate the medical history he obtained because he was consulted for purposes of giving testimony in these legal proceedings rather than for treatment. Counsel for employer is less than candid about the facts. The record reflects without contradiction that prior to August, 1979, claimant's primary treating physician was Dr. H. Nelson Hamilton of Greenville. When Dr. Hamilton died in August of 1979, claimant was still experiencing difficulties and upon the advice of her attorney she sought the care and treatment of Dr. Browning. Claimant acknowledges that Dr. Browning knew from the outset that he would be requested to give an opinion in connection with these compensation proceedings. The overriding fact was that her treating physician had died, she was continuing to experience disability and discomfort, and she needed another doctor. Dr. Browning not only examined Mrs. Aden for expert testimony purposes, but he followed her regularly over a period of some nine to ten months and he was in fact her primary treating physician during that period of time. Under these circumstances, Dr. Browning's testimony regarding the history given him by claimant was competent notwithstanding the hearsay rule. See Tucker v. Kelly, 381 So.2d 1030, 1031 (Miss. 1980); and French Drug Co., Inc. v. Jones, 367 So.2d 431, 433, 436 (Miss. 1978).
Employer then challenges Dr. Browning's testimony on the grounds that he was not an orthopedic surgeon but rather only a general surgeon. Here again we would note that for months claimant had been under the care of an orthopedic surgeon, Dr. Hamilton. Presumably, employer would leave claimant and her needs for medical care and compensation out in the cold because Dr. Hamilton was inconsiderate enough to die before these proceedings were concluded. The fact is, however, that claimant's counsel established Dr. Browning's credentials as a medical expert witness *593 at the outset of the hearing in question and those credentials were never seriously challenged until now. We are not about to hold that in order to establish a compensable back injury claim a claimant must support his claim with the testimony of an orthopedic surgeon. Our law does not require that, before his opinion will be considered, an expert witness possess the highest degree of education, training and skill obtainable. It is enough that he demonstrate a reasonable level of expertise and in this regard Dr. Browning clearly qualifies. On this record we cannot say that the Commission abused its discretion when it considered that Dr. Browning was competent to give opinion testimony as an expert witness. Cf. Hammond v. Grissom, 470 So.2d 1049, 1052 (Miss. 1985); Pharr v. Anderson, 436 So.2d 1357, 1359 (Miss. 1983).
In sum and substance, Dr. Raymond Browning testified and gave his opinion, to a reasonable medical certainty, that Mrs. Aden had experienced an injury which resulted in her being one hundred percent disabled, that this disability was substantially related to and the outgrowth of the accident which occurred on May 12, 1978, and that this disability would be permanent. "I think that she will not be able to return to work," he said.
Employer further argues that, assuming arguendo, that the testimony of Dr. Browning had independent viability, that viability is undercut by the subsequent examination and testimony of Dr. Buford Yerger. It will be recalled that Dr. Browning examined and treated Mrs. Aden on nine or ten occasions, the last one being in early June of 1980. Dr. Yerger examined claimant on only one occasion, March 23, 1981. Dr. Yerger gave his opinion that at the time of his examination the claimant had no back injury of any sort whatsoever. In this connection, employer argues that the later medical findings control, citing O'Neal v. Multi-Purpose Manufacturing Company, 243 Miss. 775, 140 So.2d 860, 862 (1962); A. Deweese Lumber Company v. Poole, 231 Miss. 83, 94 So.2d 791, 793 (1957); and Dunn, Mississippi Workmen's Compensation § 279, 350-351 (3d ed. 1982).
The thrust of the idea we glean from these authorities is that where the treatment of one physician or surgeon ends with that physician making a prediction or a prognosis regarding the claimant's future and where subsequent medical evidence establishes that the prediction did not come true, the subsequent medical evidence will be deemed to control. We do not regard this principle as dispositive of a factual controversy such as this where the disability opinion has originally been given by the physician who saw and examined and treated claimant on more occasions than any other physician and where the subsequent contradictory opinion is given by a physician who saw the claimant on only one occasion some ten months later.
We regard the testimony of Dr. Yerger vis-a-vis the testimony of Dr. Browning as each constituting admissible medical opinions which were submitted to the triers of the facts, the members of the Mississippi Workmen's Compensation Commission. The Commission was charged with the responsibility under our law for weighing and evaluating this testimony and all other testimony before it and making a finding. The net effect of the Commission's fact finding in this regard was that Dr. Yerger's testimony was simply not credible. The fact that it was admissible testimony and the fact that Dr. Yerger examined the claimant last in no way serves to undercut the Commission's finding.
In conclusion, we reject and deny employer's assignment of error that claimant's evidence, both lay and medical, is insufficient to sustain an award.

IV.

A.
The next issue tendered regards the apportionment ordered by the Commission. As explained above, in its order of August 23, 1982, the Commission found that the claimant suffered "pre-existing arthritic condition and other pre-existing conditions". *594 The Commission then further found that these pre-existing conditions "are material contributing factors to the disability". On the authority of Miss. Code Ann. § 71-3-7 (1972) the Commission ordered an apportionment, finding that claimant's permanent total disability was fifty percent attributable to the injury of May 12, 1978, and fifty percent attributable to claimant's pre-existing conditions. But for apportionment, the amount of permanent disability benefits payable would be $91.00 per week. By calculation, benefits as apportioned equaled $45.50 per week.
On appeal the Circuit Court of Leflore County reversed. Per judgment entered May 30, 1983, the Circuit Court held that the Commission had
erred in its determination that the injury of Frances W. Aden should be apportioned due to a preexisting condition, ... .
As an alternative assignment of error, employer argues that the Circuit Court should be reversed and the order for apportionment entered by the Commission reinstated.
The first reason why we are urged to reverse the Circuit Court's determination on the apportionment issue and, accordingly, reinstate the Commission's apportionment order, is procedural in nature. Claimant's cross-appeal to the Circuit Court on the apportionment issue was not timely filed, or so we are told.
The record reflects that following the Commission's order of August 23, 1982, employer timely perfected an appeal to the Circuit Court of Leflore County. The record of proceedings before the Commission was filed with the circuit clerk on or about September 24, as a result of which employer suggests that claimant's assignment of errors and brief on her cross-appeal would have been due on or about August 24, 1982. See Rule 4.01, Uniform Circuit Court Rules. Alternatively, employer concedes that claimant may have had the prerogative of asserting her cross-appeal within twenty days after employer filed its brief. Rule 4.02, Uniform Circuit Court Rules. Under this view, claimant's assignment of errors and brief on her cross-appeal would have been due on or before November 9, 1982.
In fact, claimant did not file in the Circuit Court her assignment of errors and brief on cross-appeal from the Commission's apportionment order until January 18, 1983.
Ordinarily, the enforcement of time limits for the filing of pleadings, briefs and other papers is a matter committed exclusively to the court in which the filings are required. To be sure, substantial adherence to time limitations and filing deadlines are required for a fair and orderly dispatch of a court's business. On the other hand, the granting of leniency or dispensation in the event of tardiness is a matter committed to the sound discretion of the court wherein the filings are made. Except where the time deadline may be said to be jurisdictional or unless there has been a gross abuse of discretion on the part of the particular court, we will not look behind an inferior court's determination that its filing deadlines should be relaxed in a given instance.
By analogy, we need only note that this Court has many rules imposing time limitations and filing deadlines  for the perfection of an appeal, for the filing of briefs, for the filing of petitions for rehearing. Ordinarily, those rules are and must be enforced. On the other hand, we have always retained the authority in exceptional cases and where such was necessary to prevent manifest injustice, to relax such deadlines. See Clark v. City of Pascagoula, 473 So.2d 477, 478 (Miss. 1985).
The filing deadline with which we are here concerned was one in no sense jurisdictional. Jurisdiction had been conferred upon the Circuit Court of Leflore County when employer perfected its appeal. For reasons we trust are obvious, even greater latitude ought to be allowed in the enforcement of time limitations with respect to cross-appeals than in the case of direct appeals. We are unable to find that *595 the Circuit Court abused its discretion in allowing and passing upon the cross-appeal. Accordingly, this assignment of error is denied.

B.
Second, Employer urges that the Circuit Court has departed from the substantial evidence rule. At the outset it must be conceded that a finding of apportionment is essentially a finding of fact the same as those discussed in Section III above. An apportionment determination such as that made by the Commission in this case on August 23, 1982, is subject to review in the circuit court and in this court in accordance with the same principles as have been outlined and applied above. In short, the same substantial evidence rule applies.
In Southeastern Construction Company v. Dodson, 247 Miss. 1, 153 So.2d 276 (1963), we stated:
"That percentage [of the degree of contribution] is a matter left largely to the sound discretion of the commission, to be exercised in view of all the circumstances, and upon a fair view of all the facts. Its conclusion on the degree of contribution is a determination of a question of fact, and will not be changed unless it is not supported by substantial evidence, or is manifestly wrong."
247 Miss. at 15, 153 So.2d at 283.
The above thoughts in mind, we have searched the record carefully for evidence that claimant suffered or experienced a pre-May 12, 1978, condition which in fact has contributed to the disability which she has experienced since that date. To be sure, there is substantial evidence in the record that claimant has had a rather extensive medical history ranging from rheumatoid arthritis to hemorrhoids to a depressive neurosis. We find nothing, however, in the record which suggests that any of these preexisting experiences has caused or contributed to the disability which claimant has experienced since May 16, 1978. Certainly there is no evidence that, prior to May 12, 1978, claimant suffered from any occupational disability. The record is to the contrary: prior to May 12, 1978, claimant was wholly occupationally able.
While the briefs filed on behalf of employer argue strenuously that the apportionment order should be reinstated (if compensation is allowed at all), we have searched those briefs in vain for any reference to or explanation of the specific preexisting infirmity said to entitle it to an order for apportionment. Moreover, at oral argument, several members of the Court questioned employer's counsel regarding the factual basis for the Commission's finding of a preexisting condition and consequent order for apportionment. Counsel failed to identify record evidence of any "preexisting physical handicap, disease or lesion" legally sufficient to undergird an order for apportionment under Miss. Code Ann. § 71-3-7 (1972).
We are thus presented with the situation where the Commission in broad conclusory language has made a finding of fact support for which we find in the record no substantial evidence. This absence of evidence is of particular significance in that the employer bears the burden of proof on the issue of apportionment. Walls v. Hodo Chevrolet Company, Inc., 302 So.2d 862, 865 (Miss. 1974). Seen in this light the Circuit Court was quite correct when it reversed the apportionment portion of the Commission's order, and we are left with no authority but to affirm.
For context, we would remind counsel that we have reversed pro-employer findings by the Commission where there was even greater evidence in support thereof than is the case here. Findings may be determined to be clearly erroneous, although there is some slight evidence to support them, if, on the entire record, the reviewing court is left with a firm and definite conviction that a mistake has been made by the Commission in its findings of fact. Central Electric Power Association v. Hicks, 236 Miss. 378, 390, 110 So.2d 351 (1959); Dunn, Mississippi Workmen's Compensation § 289, 374-379 (3d ed. *596 1982). We entertain such a conviction regarding the Commission's apportionment finding.

V.
A further question raised on this appeal is the extent to which employer is entitled to credit for payments made claimant under South Central Bell's Plan for Employees Pensions, Disability Benefits and Death Benefits ("the Company Benefits Plan"). As indicated above, the record reflects without contradiction that for the first 26 weeks or six months, claimant was paid her full salary which was $221.29 per week. Thereafter for the next 26 weeks claimant was paid at one-half her salary, each of those amounts being in excess of the amount of compensation payable by law, $91.00 per week.
Claimant does not dispute that employer is entitled to credit for all weekly payments made to her under the Company Benefit Plan. Western Electric Company v. Ferguson, 371 So.2d 864, 868 (Miss. 1979). Without dispute, therefore, employer owes claimant no compensation for the first 52 weeks post-injury.
Because the amount of payments under the Company Benefit Plan exceeded the amount of compensation payable by law, employer argues that it is entitled to even greater credit, suggesting that in fact claimant "has already received the equivalent of 94 weeks compensation... ." In other words, employer would have us take the total amount paid under the Company Benefits Plan and divide the same by $91.00 and with the number of weeks yielded by this mathematical division process being the number of weeks for which employer is entitled to credit. Compensation doesn't work that way.
Under employer's theory, claimant could be subjected to 42 weeks of total disability without receiving a single penny of compensation. One of the major features of the compensation act is that which provides for a steady though modest stream of income to the disabled worker. The hardship which would be visited upon the disabled worker by 42 weeks of no compensation seems obvious and wholly contrary to the spirit and purposes of the Act. For this reason the act prohibits lump sum payments or payments in other than the prescribed weekly amounts except with the express prior approval of the Commission.
What employer pays or causes to be paid to claimant under the Company Benefit Plan is of no relevance here so long as the amount is at least as much as the compensation payable by law. The Company Benefits Plan is a part of the employment contract between employer and employee. If either in collective or private employment bargaining an employer agrees to pay disabled workers an amount in excess of compensation payable, that is its prerogative. No doubt South Central Bell made such an agreement for valuable considerations and in the expectation of receiving over the long run benefits deemed sufficient to it. We wholly refuse, however, to allow such a Company Benefits Plan to be used to subject an employee such as this claimant to a substantial period of disability without any compensation whatsoever. Employer's obligation adjudicated here to pay Frances W. Aden compensation begins immediately following the last of the 52 weeks for which claimant was paid under the Company Benefit Plan.

VI.
Employer next assigns as error so much of the judgment of the Circuit Court as affirms the Commission's assessment of the ten percent penalty under Miss. Code Ann. § 71-3-37(5) (1972).
The Mississippi Worker's Compensation Commission order of August 23, 1982, provides merely that
There shall be added to each installment of compensation not timely paid the equivalent of ten percent thereof as provided in Section 71-3-37(5).
The statute in question authorizes imposition of the ten percent penalty upon non-payment of compensation without an award for more than fourteen days after it *597 becomes due as a matter of law or upon the employer's failure to file a notice to controvert within fourteen days after he has knowledge of the alleged injury. Here, without question, the employer did not give timely notice to controvert. The record reflects without contradiction, however, that, under employer's Company Benefit Plan, claimant received the equivalent of full salary for twenty-six weeks and half salary for an additional twenty-six weeks. These sums, even half salary, exceeded the amount of compensation due and payable. Claimant is entitled to no penalty for the 52 weeks in which she was receiving payments under the Company Benefit Plan for in a legal sense during that time compensation payable was in fact being paid within fourteen days after it became due.
Employer argues that thereafter imposition of the penalty was discretionary with the Commission and that under the said to be peculiar facts of this case the Commission abused its discretion when it assessed the penalty. The source of this discretion in the law is said to be in that portion of the statute which authorizes the Commission to "excuse" non-payment of compensation. The actual language of the statute in question reads
... . [O]r unless such nonpayment is excused by the Commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.
Miss. Code Ann. § 71-3-37(5) (1972).
There is not the slightest suggestion in the record in this case that, once the 52 week period of "compensation" under the Company Benefit Plan had ended, "nonpayment" by employer was thereafter owing to conditions over which he had no control. Not surprisingly, there is no Commission finding to that effect. Absent such a finding, the law is clear that imposition of the penalty is mandatory and is not excused by the fact that the employer may have disputed liability in good faith. Southern Engineering and Electric Co. v. Chester, 226 Miss. 136, 142-43, 83 So.2d 811 (1955); Dunn, Mississippi Workmen's Compensation § 299, 392-96 (3d ed. 1982).
The question is not whether the penalty is mandatory or discretionary but whether the penalty has been assessed by the Commission consistent with the conditions provided therefor in the Act. It is our reading of Section 71-3-37(5) that there are three circumstances under which an employer may of right claim relief from the burdens of the penalty. These are, first, that the employer has paid compensation installments within fourteen days of when they became due; second, and in the alternative, that the employer has filed a notice to controvert within fourteen days of the day he received notice of the injury; or, third, that nonpayment, if it occurred, was as a result of conditions over which the employer had no control. None of those conditions have any application to the case at bar, accordingly the Commission correctly assessed the ten percent penalty beginning with the 53rd week, and the Circuit Court correctly affirmed. This assignment of error is denied.

VII.
The Commission further ordered that employer pay for, furnish and provide to claimant all reasonable and necessary medical services and supplies as the nature of her injury or the process of her recovery may require as provided in Miss. Code Ann. § 71-3-15 (1972). The circuit judge affirmed and employer assigns the point as error. In its brief, however, employer suggests that this is a moot question in that all of claimant's medical expenses have in fact been paid by employer.
Upon due consideration, we have determined that the award of medical expenses made by the Commission and affirmed by the Circuit Court should be affirmed here. To the extent that those expenses have been paid by employer or through the Company Benefits Plan, the point may well be moot. We hold today, however, that, to the extent that such expenses have not been paid or payment procured by employer, employer *598 is liable therefor in accordance with the Commission's order.

VIII.
In summary and conclusion, the judgment of the Circuit Court of Leflore County is affirmed. Interest at the legal rate is allowed on all past due compensation payments from the due dates thereof. Presto Manufacturing Co. v. Chandler, 252 Miss. 36, 40, 172 So.2d 431, 432 (1965); Dunn, Mississippi Workmen's Compensation § 293, 383-87 (3d ed. 1982). In addition, the fifteen percent statutory damage penalty is hereby assessed against Employer. Miss. Code Ann. § 11-3-23 (Supp. 1984); Dunn, Mississippi Workmen's Compensation § 293, 384 (3d ed. 1982).
A postscript. Everything about this case seems contrary to the spirit and purposes of our Worker's Compensation Act. That act and worker's compensation laws generally were in part premised upon the empirically demonstrable fact that disabling industrial accidents often occur in unusual and unlikely ways and under circumstances where it is difficult to demonstrate medically or otherwise just how the incident caused injury or disability. Our law declared irrelevant notions of fault. It was thought that the fact of accidental injury in a work connected setting resulting in disability was all that a worker should have to establish to obtain the modest compensation benefits allowable by law. Yet we have here an employer who for seven years has doggedly pursued the proposition that reaching to disconnect a telephone call and punching a Simplex time card simply could not cause the kind of disabling back injury claimant asserts here.
Another rainbow sought by the legislative draftsmen was prompt disposition of compensation claims, yet this one has dragged on for in excess of seven years. Employer says part of the delay was due to claimant's requests for continuances of hearings before the Administrative Judge. Employer does not say that it was paying compensation during that time.
Most difficult to reconcile is employer's appealing of the August 23, 1982, order of the Mississippi Workers' Compensation Commission. That order, it will be re-called, required apportionment and directed payment of compensation in the beneficient sum of $45.50 per week. Yet employer appealed, clinging to the notion that claimant was a malingerer who for reasons not explained preferred that state of affairs to steady employment at a salary of $221.00 per week.
Lest we be misunderstood, we do not question employer's right to litigate to the nth degree and assert every defense it perceives it may have. In this regard we have tried to adjudge each issue tendered by employer consistent with the law and the facts. When we do this we have no alternative but to affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] This summary of the procedural history of the case omits reference to various wranglings below having no importance with regard to the issues before the Court.
[2] The act reasonably requires notice of injury with 30 days, Miss. Code Ann. § 71-3-35 (1972), and the Commission correctly found that the statutorily required notice was given.
[3] Employer's approach here is reminiscent of the attitude Leo Durocher used to have toward umpires: he never questioned their integrity, only their eyesight.
[4] Regarding the medical records of the deceased physician, Dr. Hamilton, see Hercules, Inc. v. Walters, 434 So.2d 723 (Miss. 1983) wherein we held that under certain circumstances such records were admissible in compensation proceedings.