743 So.2d 997 (1999)
Nannie N. SMITH, Appellant,
v.
B.C. ROGERS PROCESSORS, INC., Appellee.
No. 97-CC-00221 COA.
Court of Appeals of Mississippi.
May 4, 1999.
*998 Lampton O. Williams, Jr., Poplarville, Attorney for Appellant.
Gilson Davis Peterson, Ridgeland, Attorney for Appellee.
EN BANC.
COLEMAN, J., for the Court:
¶ 1. Nannie N. Smith appeals from the "Findings and Order" rendered by the Circuit Court of Pike County which affirmed the "Full Commission Order" of the Mississippi Workers' Compensation Commission. The Commission's order affirmed the "Order of Administrative Judge," but amended it to terminate Ms. Smith's third period of temporary total disability as of November 10, 1992, rather than January 1, 1993, as ordered by the administrative judge. A consequence of the Commission's terminating Ms. Smith's third period of temporary total disability as of November 10, 1992 was to deny payment to Dr. Sharon Collins for her services rendered to Ms. Smith because Dr. Collins examined Ms. Smith for the first time on March 25, 1993. As required by Rule 28(a)(3) of the Mississippi Rules of Appellate Procedure, Ms. Smith presents to this Court for its analysis and resolution the following five issues contained in her statement of issues. We quote her issues verbatim:
1. The Commission and lower court's decision should be modified based on the evidence and the beneficent purposes of the Mississippi Workers' Compensation Law.
2. The appellant Nannie N. Smith is totally disabled and entitled to workers' *999 compensation benefits in the amount of $133.34 per week for a period of 450 weeks[,] and the Commission and lower court erred in finding that Nannie N. Smith, because of her injuries sustained in her industrial accidents, was only temporarily totally occupationally disabled from March 26, 1992 through April 3, 1992[;] April 8, 1992 through April 27, 1992[;] and July 27, 1992 through November 10, 1992[;] except for periods when she may have worked.
3. The Commission and [circuit] court erred in ordering the employer [to] pay Nannie N. Smith temporary total disability benefits in the amount of $133.34 per week only for the periods from March 26, 1992 through April 3, 1992[;] April 8, 1992 through April 27, 1992[;] and July 27, 1992 through November 10, 1992[;] minus any amount already paid and any period which Ms. Smith may have worked.
4. The Commission and [circuit] court erred in not finding that Ms. Smith is temporarily totally disabled and entitled to workers' compensation benefits in the amount of $133.34 during the period of her disability.
5. The Commission and [circuit] court erred in not awarding Ms. Smith all reasonable and necessary medical benefits past, present and future including the expenses of treatment by Dr. Sharon Collins.
From our analysis of these issues, we find no error and affirm the "Findings and Order" of the circuit court.

I. FACTS
¶ 2. Appellant Nannie Smith was employed by appellee, B.C. Rogers Processing, Inc., (Rogers) as a fillet puller on an assembly line. A fillet puller "pulls the breast part of the meat off the bone." On March 26, 1992, Ms. Smith twisted her left ankle when she slipped on a wet stairway on the B.C. Rogers premises. She reported the accident to her supervisor, who instructed her to go to the emergency room of Southwest Mississippi Regional Medical Center in McComb for treatment. Four days later, on March 30, Dr. Henry L. Lewis, a family practitioner, examined Ms. Smith's sprained ankle, prescribed medication, and instructed her that she could return to work on April 3, 1992.
¶ 3. On April 8, 1992 while she was at work, Ms. Smith slipped again and injured her back. Dr. Lewis prescribed physical therapy and referred Ms. Smith to Dr. Thomas Jeffcoat, an orthopedic surgeon. Dr. Jeffcoat found that the tenderness over Ms. Smith's right scapula medial border indicated bursitis, and he treated the right scapula area with an injection. He released Ms. Smith to return to her work on April 27, 1992.
¶ 4. After Ms. Smith returned to her work for the second time, she slipped for the third time on July 22, 1992, as she entered a B.C. Rogers building where rain had dampened the floor. She was treated at Southwest Mississippi Regional Medical Center, and Dr. Jeffcoat examined her injuries that same day. Dr. Jeffcoat noted that Ms. Smith retained a good range of motion of her neck and lower back and that she experienced pain in raising her legs. He diagnosed Ms. Smith's condition as a low back strain and recommended physical therapy. After conducting a follow-up examination on August 3, 1992, Dr. Jeffcoat released her to return to her work without restrictions.
¶ 5. Later, Ms. Smith requested of Rogers that it extend workers' compensation coverage for treatment by Dr. George Wilkerson after Dr. Jeffcoat released her to resume her work. Mike Dolle, the insurance manager for Rogers, agreed that Rogers would pay Dr. Wilkerson for his treatment of Ms. Smith and for any tests associated with it. Dr. Wilkerson, a neurologist, initially saw Ms. Smith on August 20, 1992, when Smith complained of pain running down her legs, particularly her right leg; numbness and spasm in her left arm; headaches; and light-headedness. Dr. Wilkerson diagnosed a lumbosacral *1000 strain and admitted Smith to Methodist Hospital in Hattiesburg for diagnostic testing, including a cervical, lumbar, and thoracic myelogram, a CAT scan, nerve tests, and a bone scan. The test results were all normal except for the bone scan, which indicated some sclerotic changes in Ms. Smith's lumbar spine. Dr. Wilkerson considered these changes insignificant. He concluded that Ms. Smith had no major impairment and thus was able to return to work.
¶ 6. Yet unsatisfied with her perceived lack of progress in her recovery, Ms. Smith next requested that Rogers authorize Dr. David Bomboy, a Hattiesburg orthopedic surgeon to whom Dr. Wilkerson had referred her, to examine her. Dolle again authorized payment for Dr. Bomboy's examination and treatment of Ms. Smith's condition. When Dr. Bomboy examined Ms. Smith on November 9, 1992, she complained of pain in her back and left shoulder. Dr. Bomboy found that Smith had full, unrestricted motion in her back and a negative straight leg raising to 90 degrees. After reviewing Smith's myelogram and CAT scan and determining that the results were normal, he released Smith to return to work as of November 10, 1992.
¶ 7. Ms. Smith never returned to her work at Rogers. Instead, more than four months later, on March 25, 1993, without prior authorization from B.C. Rogers, Ms. Smith sought further treatment from Dr. Sharon Collins, a family physician in Tylertown. Dr. Collins examined Ms. Smith on March 25, April 13, April 20, June 4, November 12, November 23, and December 9, all in the year 1993. Pursuant to an appointment which Dr. Collins had made earlier, Dr. Dan Matthews, a resident in orthopedics at the University of Mississippi Medical Center, examined Ms. Smith at the University Hospital's spine clinic in Jackson on January 14, 1994. Dr. James L. Hughes, an orthopedicist on the staff of the University of Mississippi Medical Center, supervised Dr. Matthews's residency and later conferred with Dr. Matthews about Dr. Matthews's examination of and proposed treatment of Ms. Smith's problem. Dr. Matthews's diagnosis of Ms. Smith's condition was "low back pain with non-organic origin." After her visit to the medical center's spine clinic, where Dr. Matthews examined her on January 14, 1994, Dr. Sharon Collins did not see Ms. Smith again until May 12, 1994.

II. PRE-APPEAL PROCEEDINGS
¶ 8. Ms. Smith had filed three separate petitions to controvert for each of her separate work-related injuries that had occurred on March 26, April 8, and July 22, but because Ms. Smith and Rogers agreed that her three injuries were "causally related," the administrative judge conducted one hearing for all three injuries. The "Order of Administrative Judge" which the administrative judge entered after the hearing recited that Ms. Smith and Rogers had "agree[d] that at the time of [Ms. Smith's] alleged injury[,] her average weekly wage was $200.00." The order also recited that Ms. Smith and Rogers "stipulated that the issues to be adjudicated [were]: 1. The nature and extent of any disability claimant sustained in her three industrial accidents. 2. The reasonableness and necessity of Dr. Sharon Collins[s] treatment of [Ms. Smith]."
¶ 9. Ms. Smith and Mike Dolle, the insurance manager for Rogers, attended the hearing and testified before the Commission's administrative judge. Ms. Smith testified about her injuries, the physicians who had examined and treated her injuries, and, from her perspective, the disabling impact of her injuries on her. The medical records compiled by Dr. David Bomboy, Dr. George E. Wilkerson, Dr. Henry L. Lewis, and Dr. B. Thomas Jeffcoat were admitted into evidence based upon their respective affidavits of authentication as permitted by the procedural rules of the Commission. Also admitted were the depositions of Dr. Sharon Collins and Dr. James L. Hughes. However, the administrative judge included in his order *1001 the following evaluation of Dr. James L. Hughes's deposition, which we quote verbatim because we find it relevant to our analysis and ultimate resolution of Ms. Smith's issues:
Dr. James L. Hughes, an orthopedic surgeon who practices in Jackson, testified that on January 14, 1994, claimant [Ms. Smith] was evaluated by a team of residents at University Medical Center where he worked. He testified that he did not evaluate claimant on that date. During the taking of Dr. Hughes' deposition, claimant's attorney objected to his testifying as to the findings made by the resident teams.... [D]uring the hearing, I ruled that Dr. Hughes' deposition was admissible. Having since read Dr. Hughes' deposition, I am inclined to sustain claimant's objection[,which was brought to my attention prior to the beginning of the hearing] to his testifying as to the findings of the resident teams, and particular [sic] that of a David Matthew, a member of the team. Since he did not make the finding, Dr. Hughes' findings are hearsay. I am of the opinion that Dr. Hughes' testimony for the most part is worthless, except for his personal opinions pertaining to his review of x-rays taken of claimant. Dr. Hughes testified that he reviewed x-rays taken of claimant's back and cervical spine which did not show that she had any narrowing of any disc space.
Pursuant to his thorough review and analysis of Ms. Smith's testimony and the physicians' opinions and medical records which they compiled, the administrative judge ordered that Rogers:
1. Pay claimant [Ms. Smith] temporary total disability benefits in the amount of $133.34 per week for the periods of March 26, 1992 through April 3, 1992, April 8, 1992 through April 17, 1992, and July 27, 1992 through January 1, 1993, minus any amount already paid and any period which claimant may have worked.
2. Pay all medical expenses claimant has incurred as a result of her injury, including expenses she incurred for treatment from Dr. Sharon Collins and provide her all necessary future medical expenses.
3. Pay the statutory penalties pursuant to Mississippi Code Annotated, Section 71-3-37(5).
¶ 10. Ms. Smith petitioned the Commission for review of the order of administrative judge on the grounds, among others, that the administrative judge had "erred in finding that ... claimant [Ms. Smith] was only temporarily totally occupationally disabled" during the three periods of time which the administrative judge found. Rogers cross-petitioned the Commission on the grounds, among others, that "[t]he administrative judge erred in failing to find the maximum medical improvement date of [Ms. Smith] to be August 10, 1992," that "[t]he administrative judge erred in requiring [Rogers] to pay for the medical expenses associated with Dr. Sharon Collins' treatment of this claimant," and that "[t]he administrative judge erred in finding that [Rogers] must provide claimant all necessary future medical expenses associated with [her] claims."
¶ 11. In its "Full Commission Order," the Commission found that "the overwhelming weight of the credible evidence leads to the conclusion that the claimant's third and final period of temporary disability ended on November 10, 1992, at the very latest." November 10, 1992, was the date that Dr. David Bomboy had recommended that Ms. Smithto quote from Dr. Bomboy's records"return to work... regular duty, no restrictions." Consistent with its amendment of the administrative judge's finding that Ms. Smith's third period of temporary total disability had ended on January 1, 1993, the Commission further found:
The administrative judge also awarded the claimant all reasonable and necessary medical benefits, past, present and future, including the expenses of *1002 treatment by Dr. Sharon Collins. As previously noted, however, the great weight of evidence shows that the claimant fully recovered from her industrial injuries by November 10, 1992, and suffered no permanent impairment and incurred no permanent restrictions. Under the circumstances, any need for treatment after this date cannot reasonably be related to the injuries in question. We therefore affirm the judge's award of medical benefits, but amend that award to provide that the [e]mployer [Rogers] is not responsible for any medical treatment of the [c]laimant after November 10, 1992, since it has not been established to our satisfaction that a need for such treatment exists as the result of the injuries occurring on either March 26, April 8, or July 27, 1992.
The Commission affirmed the administrative judge's failure "to find that the claimant was permanently disabled in any respect as a result of these injuries" because "[t]he evidence more than adequately supports this view." With these findings included within its order, the Commission "affirmed and amended" the "Order of Administrative Judge."
¶ 12. Ms. Smith appealed the Commission's order to the Circuit Court of Pike County, and that court rendered its "Findings and Order" by which it affirmed the Commission's order. Ms. Smith's appeal from the circuit court's findings and orders has reached this Court for its analysis and resolution of her issues, which we previously quoted.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES

A. Standard of Review
¶ 13. Section 71-3-51 of the Mississippi Code is the threshold for the determination of our standard of review. This section provides, inter alia:
The circuit court shall review all questions of law and of fact. If no prejudicial error be found, the matter shall be affirmed and remanded to the commission for enforcement. If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the commission should have entered.
Miss.Code Ann. § 71-3-51 (Rev.1995). "The standard of review in worker's compensation cases is limited. The substantial evidence test is used..... The Workers' Compensation Commission is the trier and finder of facts in a compensation claim. This court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." Inman v. Coca-Cola/Dr. Pepper Bottling Co. of Memphis, Tennessee, 678 So.2d 992, 993 (Miss.1996) (citations omitted). See Walker Manufacturing Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991) (opining that "the Circuit Courts must defer in their review to the findings of the Commission") (citations omitted). Moreover, it is the Workers' Compensation Commission that is the fact finder in workers' compensation claimsnot the administrative judge. Inman, 678 So.2d at 993 (citing McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 165 (Miss.1991)). "It is not the role of the circuit courts to determine where the preponderance of the evidence lies when the evidence is conflicting, given that it is presumed that the Commission, as trier of fact, has previously determined which evidence is credible and which is not." Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1224-1225 (Miss.1997) (citing Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293 (Miss.1990)). Therefore, absent any error of law, if substantial credible evidence supports the Commission's decision, the reviewing court may not interfere. Smith v. Jackson Const. Co., 607 So.2d 1119, 1124 (Miss.1992).

B. Ms. Smith's second, third, and fourth issues

1. Ms. Smith's and Rogers's arguments
¶ 14. Ms. Smith's first issue is a non-issue because she offers neither authority *1003 nor argument to support it. No doubt she intended it as a reminder to this Court of the admittedly "beneficent purposes of the Mississippi Workers' Compensation Law." Ms. Smith's second, third, and fourth issues are inherently interrelated because they all question the Commission's finding "that the claimant fully recovered from her industrial injuries by November 10, 1992, and suffered no permanent impairment and incurred no permanent restrictions." Also, these same three issues question the Commission's affirming the administrative judge's failure "to find that the claimant was permanently disabled ... as a result of these injuries...."
¶ 15. Ms. Smith argues that "the Commission erred in rejecting the medical testimony of Dr. [Sharon] Collins concerning [Ms. Smith's] back injury, her permanent disability[,] and limitations which have been imposed upon [Ms. Smith's] activities by Dr. Collins." Ms. Smith "submits that Dr. Collins's opinion should be accepted as accurately describing Ms. Smith's condition" for two reasons. First, the opinions of Drs. George E. Wilkerson, Thomas Jeffcoat, and David Bomboy that Ms. Smith had recovered sufficiently from her injuries that she could return to her former work "should not be considered as conflicting with Dr. Collins's testimony [that Ms. Smith was permanently totally disabled]." The second reason is that Drs. Wilkerson and Jeffcoat's opinions "should be considered as mere predictions as to what would happen in the future to Ms. Smith." Thus, according to Ms. Smith's rationale, because Dr. Collins's opinion that Ms. Smith was permanently and totally disabled was "uncontradicted," Dr. Collins's opinion "should be accepted as showing that [Drs. Wilkerson and Jeffcoat's] predictions [that Ms. Smith could return to work as of November 10, 1993] did not come true."
¶ 16. Ms. Smith's assertion that Dr. Collins's opinion that she was permanently and totally disabled was "uncontradicted" ignores the portion of Dr. Hughes's deposition which the administrative judge considered. The administrative judge only considered Dr. Hughes's testimony about his examination of Ms. Smith's x-rays taken at the University Medical Center on January 14, 1994. About her x-rays, Dr. Hughes testified that Ms. Smith's "x-rays taken of [her] back and cervical spine ... did not show that [Ms. Smith] had any narrowing of any disc space." In this Court's view, the absence of "any narrowing of any disc space" in Ms. Smith's spine is consistent with the opinions of Drs. Wilkerson and Bomboy that Ms. Smith had sustained no permanent disability and, hence, could return to work.
¶ 17. Rogers counters with its observation that "[d]uring the times that Dr. Collins examined [Ms. Smith], [Dr. Collins] never ordered any tests, physical therapy, or pursued any objective evaluation of [Ms. Smith's] pain." Rogers continues:
"Quite obviously, there is little or no credibility to the findings and conclusions of Dr. Collins. The fact that she was the last of the testifying physicians to observe [Ms. Smith] has little weight when compared to the findings of Drs. Jeffcoat, Wilkerson, Bomboy and Hughes."
Rogers then concludes that the Commission's termination of Ms. Smith's temporary total disability benefits on November 10, 1992, was "supported by the substantial weight of the credible evidence and is not arbitrary or capricious." Therefore, according to Rogers, the standard of our view of the Commission's decisions requires that this Court affirm the "Findings and Order" of the circuit court.

2. Analysis and resolution of these three issues
¶ 18. Dunn, Mississippi Workmen's Compensation, § 279 is the bedrock upon which Ms. Smith rests the foundation of her argument. There, the author wrote:
Finally, apparent conflicts may be reconciled by relating the medical evaluations to the time of the respective physical *1004 examinations. Thus, if a claimant sustains a compensable injury and received medical treatment until discharged as cured, the testimony of the doctor who discharged the claimant may not be sufficient to furnish an effective conflict with that of another doctor who examined the claimant at a later date and who gives it as his opinion that the patient remains in a disability status, especially if the claimant also claims that he continues to be disabled from the injury.
The basic reasoning is that the last examination and treatment begins where the former ends and a mere prognosis by the first doctor that claimant will have no future trouble does not conflict with credible evidence of subsequent developments. The witnesses simply speak as of different periods of time.
¶ 19. Ms. Smith also cites E.G. O'Neal v. Multi-Purpose Manufacturing Co., 243 Miss. 775, 140 So.2d 860 (1962), in which the Mississippi Supreme Court wrote:
The medical evidence in this record is not actually conflicting, but can be easily reconciled just as the Court said in M.T. Reed Construction Co. et al. v. Martin, 215 Miss. 472, 61 So.2d 300, [215 Miss. 472] 63 So.2d 528, where one doctor, on the basis of his finding and treatment, was of the opinion that the claimant's disability would amount to twenty percent, which was in fact a prediction as to what would happen in the future. Against that prediction was the testimony of the doctor, who subsequently treated the claimant, and which showed that the prediction of the other doctor did not come true.
O'Neal, 243 Miss. at 780, 140 So.2d at 862. O'Neal involved a claim for workers' compensation benefits. O'Neal was a welder who had undergone a gallbladder operation and, later, another abdominal operation, both of which were successful. 243 Miss. at 777, 140 So.2d at 861. Later, O'Neal experienced a pain in his abdomen when he lifted a housing for a tractor elevator. Id. Dr. Elton S. Thomas examined O'Neal and diagnosed "a strain of the muscles of the abdomen and strain on the post-operative wound [which resulted from the two earlier operations]." 243 Miss. at 778, 140 So.2d at 861. Dr. Thomas "was of the opinion that a full recovery should be effected within three more months from the time he [Dr. Thomas] saw [O'Neal]." 243 Miss. at 779, 140 So.2d at 861. However, Dr. Thomas never again saw O'Neal. Id.
¶ 20. Later, Dr. Glenn B. Richardson examined O'Neal and opined that "[O'Neal's] condition was permanent and would affect [O'Neal's] ability to lift heavy objects." Id. At some point Dr. Thomas had testified that "if a qualified doctor, three months after the examination which he had made, found that there was still a strain to [O'Neal's] abdominal wall and tenderness continued to exist, then he, Dr. Thomas, `could not possibly state how long in the future [O'Neal's] pain would continue...." 243 Miss. at 780, 140 So.2d at 862. We have recited these details from the O'Neal opinion to demonstrate that the quotation from the O'Neal opinion on which Ms. Smith relies pertained to what was truly a physician's "prediction as to what would happen in the future."
¶ 21. To counter Ms. Smith's emphasis on the opinion of Dr. Collins as the latest physician to treat Ms. Smith and to emphasize the discretion of the fact-finder like the administrative judge, Rogers cites South Central Bell Telephone Co. v. Aden, 474 So.2d 584 (Miss.1985). To an extent, Aden is the mirror image of the case sub judice. In Aden, the supreme court affirmed the circuit court's affirmance of the Commission's determination that the claimant, Frances W. Aden, was permanently and totally disabled. Aden, 474 So.2d at 598. Ms. Aden claimed that she had injured her lower back while she worked as a directory assistance operator in Greenwood. Id. at 586. Ms. Aden's first orthopedic surgeon, Dr. H. Nelson Hamilton, died after he had performed a *1005 discogram, after which Ms. Aden "sought medical attention from Dr. Raymond Browning, a general surgeon...." Id. at 587. Dr. Browning had treated Ms. Aden since November 1979. Id.
¶ 22. Dr. Buford Yerger, an orthopedic surgeon, later examined Ms. Aden one time on March 23, 1981, at her employer's request. Id. at 588. Whereas Dr. Browning, a general surgeon who "ha[d] seen [Ms. Aden] at monthly intervals since November, 1979," opined that "due to the duration of [Ms. Aden's] disability, he considered claimant to be permanently disabled," the results of Dr. Yerger's physical examination of Ms. Aden "were normal." Id. Thus, Dr. Yerger opined that Ms. Aden "suffered no permanent impairment and was able to return to work on March 23, 1981 [the date he examined her]." Id. South Central Bell Telephone Co. argued that even though "Dr. Browning examined and treated Mrs. Aden on nine or ten occasions, the last one being in early June of 1980," Dr. Yerger's "later medical findings control[led]." Id. at 593. The supreme court rejected Bell's argument and, instead, regarded the respective testimony of Drs. Yerger and Browning to "constitut[e] admissible medical opinions which were submitted to the triers of the facts, the members of the Mississippi [Workers'] Compensation Commission." Id. Acknowledging that "[t]he net effect of the Commission's fact finding in this regard was that Dr. Yerger's testimony was simply not credible," the supreme court explained, "The fact that it was admissible testimony and the fact that Dr. Yerger examined the claimant last in no way serves to undercut the Commission's finding." Id.
¶ 23. In the case sub judice, the opinions of Drs. Bomboy, Jeffcoat, and Wilkerson are not "prediction[s] as to what would happen in the future." Instead, the opinions of these three physicians, one neurosurgeon and two orthopedists, concerned a presently existing fact, which was that on or before November 10, 1993, Ms. Smith had attained maximum medical recovery from the three work-related injuries which she had sustained and could therefore return to work. The administrative judge analyzed as follows Dr. Sharon Collins's opinion that Ms. Smith "ha[d] been totally occupationally disabled since the date [March 25, 1993][1] she initially examined her":
[Dr. Collins] believes claimant has musculoskeletal pain caused by a lumbosacral spine strain. Dr. Collins's testimony indicates that this condition caused claimant to have chronic back and leg pain. Dr. Collins admits that for the most part her opinion is based primarily on claimant's subjective complaints. Dr. Collins did note that during some of her visits with claimant, she appeared to have had back and cervical muscle spasms.
The administrative judge noted that Dr. Wilkerson's findings were "supported by a series of diagnostic tests" and that Dr. Wilkerson "found that claimant has no major impairment and that she was able to return to work as of the day he last saw her, which was in September 1992." The administrative judge continued, "The orthopedics and neurosurgeon [were] unable to account for [Ms. Smith's] complaints, while [Dr. Collins relied] upon the subjective complaints of [Ms. Smith]." While the administrative judge acknowledged "that the [supreme] court has never held that a specialist's findings are per se entitled to more weight than a general practitioner," he nevertheless opined that "it [flew] in the face of reasonableness to totally disregard objective findings and testimony of several specialists merely because there is contrasting testimony from one family practitioner." The administrative judge then concluded, "I am inclined to believe *1006 that the findings of Dr. Bomboy and Dr. Wilkerson in particular should be given more weight than that of Dr. Collins, because their findings are supported by objective tests and findings, whereas Dr. Collins's conclusions are based almost exclusively on [Ms. Smith's] subjective complaints."
¶ 24. Dunn, Mississippi Workmen's Compensation, § 279 and O'Neal notwithstanding, this Court finds Aden dispositive of Ms. Smith's second, third, and fourth issues. Just as the Commission as the ultimate fact-finder rejected Dr. Yerger's testimony and opinion even though he was the last physician who examined Ms. Aden and accepted instead Dr. Browning's opinion that Ms. Aden was permanently and totally disabled in Aden, so also did the Commission reject Dr. Sharon Collins's testimony and opinion that Ms. Smith was permanently and totally disabled. The administrative judge explained in his order that he found the opinions of Drs. Bomboy, Jeffcoat, and Wilkerson more credible than Dr. Collins's opinion because their opinions were based upon objective tests rather than Ms. Smith's subjective symptoms like her pain. Dr. Wilkerson, a neurologist selected by Smith, and Dr. Bomboy, an orthopedic surgeon selected by Smith, certified that a myriad of objective diagnostic tests revealed no significant abnormalities in Smith's spine, nerves, or bones. Furthermore, Dr. Jeffcoat and Dr. Bomboy found that Smith retained a good range of motion. Just as the supreme court affirmed the Commission's finding Dr. Browning's opinion more credible than Dr. Yerger's opinion in Aden, so does this Court affirm the Commission's finding the opinions of Drs. Bomboy, Jeffcoat, and Wilkerson more credible than the opinions of Dr. Collins.
¶ 25. For the same reasons, we affirm the Commission's amendment of the order of the administrative judge by which the Commission terminated Ms. Smith's third period of temporary disability as of November 10, 1993, the date that Dr. Bomboy released Ms. Smith to return to work. After Ms. Smith completed some physical therapy, Dr. Jeffcoat released her to return to work on August 3, 1992. Likewise, Dr. Wilkerson reviewed Smith's diagnostic tests and determined that Smith demonstrated no major impairment. He concluded, "I see nothing that would prevent her from returning to employment at this time. I don't see anything that would keep her in any type of restricted employment environment and I think she could go back to work full time." Therefore, Dr. Wilkerson released Smith to work on October 12, 1992. Dr. Bomboy reviewed the results of the objective diagnostic tests and examined Smith on November 9, 1992. After discerning that Smith had "full, unrestricted range of motion," "normal neurological status," and a negative straight leg raising to 90 degrees, Dr. Bomboy recorded, "I find no remaining pathology in this lady." Therefore, Dr. Bomboy released her to resume her employment on November 10, 1992. This evidence supports the Commission's finding that Ms. Smith's disability ended absolutely no later than November 10, 1992. Nothing in the record supports the administrative judge's finding that Ms. Smith's third period of temporary disability ended on January 1, 1993.

C. Ms. Smith's fifth and last issue
¶ 26. While Ms. Smith composes her fifth and last issue in the broadest of terms, i.e., "all reasonable and necessary medical benefits past, present and future including the expenses of treatment by Dr. Sharon Collins," only Dr. Collins's fees are at issue because only hers were not paid by Rogers. Ms. Smith offers no authority on which to base her argument that the Commission erred when it refused to order Rogers to pay Dr. Collins's fees. Indeed, Ms. Smith's only assertion to support her position on this issue is that "[u]nder the statute and rules in effect at the time of Ms. Smith's injuries, she was entitled to select Dr. Collins as her treating physician." Rogers counters her assertion by reminding this Court that Mike Dolle, the insurance manager for Rogers, testified *1007 that Ms. Smith first requested that Rogers authorize Dr. George Wilkerson to treat her, which request Mr. Dolle "honor[ed]." Ms. Smith requested treatment by Dr. Wilkerson after Drs. Henry Lewis and Thomas Jeffcoat had already treated her following her third injury on July 22, 1992. Mr. Dolle testified that Rogers paid Dr. Wilkerson's fees.
¶ 27. Later, Ms. Smith asked Mr. Dolle to authorize her treatment by Dr. David Bomboy, which request Mr. Dolle also approved. Mr. Dolle also testified that he never authorized Dr. Collins's treatment of Ms. Smith and, further, that Dr. Collins never submitted her statements for services rendered to Rogers. Thus, Rogers contends that it doubly satisfied the requirement of Section 71-3-15 of the Mississippi Code which provides that "[t]he injured employee shall have the right ... in his discretion, to select one (1) competent physician of his choosing...." Miss. Code Ann. § 71-3-15 (Rev.1995).
¶ 28. In the absence of Ms. Smith's citation of authority other than Section 71-3-15 by implication of her argument, this Court relies on the first sentence of Section 71-3-15 which reads: "The employer shall furnish such medical, surgical, ... and other apparatus for such period as the nature of the injury or the process of recovery may require." Miss.Code Ann. § 71-3-15 (Rev.1995). We previously quoted the Commission's finding that "the claimant fully recovered from her industrial injuries by November 10, 1992...." The Commission then concluded that "[u]nder the circumstances, any need for treatment after this date cannot reasonably be related to [her] injuries in question." It was for this reason that the Commission ordered that "Rogers was not liable for payment of any medical bills which Ms. Smith incurred after November 10, 1992." The Commission never considered the issue of whether Ms. Smith was entitled to select Dr. Collins pursuant to Section 71-3-15 of the Mississippi Code.
¶ 29. Because this Court has found that substantial evidence supported the Commission's amendment of the administrative judge's order that Ms. Smith's third period of temporary total disability terminated on November 10, 1992, because Section 71-3-15 provides that Rogers as employer shall furnish Ms. Smith's medical needs "for such period as the nature of [her] injury or the process of [her] recovery may require," and because Ms. Smith offers this Court no authority to support the proposition that Rogers was obligated under Mississippi's Workers' Compensation Act to furnish her medical needs beyond the date that the Commission found her temporary total disability ended, we affirm the Commission's amendment of the order of the administrative judge.

IV. SUMMARY
¶ 30. Notwithstanding Ms. Smith's arguments which focus upon the testimony and opinion of Dr. Sharon Collins that Ms. Smith was permanently and totally disabled and her further reliance upon authorities which appear to require that because Dr. Collins was the last physician to examine Ms. Smith, her opinion ought automatically to be given credibility precedence over the opinions of Drs. Wilkerson and Bomboy, this Court finds that the Full Commission Order was supported by substantial evidence. Thus, this Court affirms the "Findings and Order" of the circuit court.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY AFFIRMING THE FULL COMMISSION ORDER OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The record hints that Dr. Collins first saw Ms. Smith in July 1992, before Dr. Jeffcoat first examined Ms. Smith on July 27 of that same year; but in her deposition Dr. Collins did not testify about examining or treating Ms. Smith at that time. Hence, this Court adopts the date of March 25, 1993 as the date of Ms. Smith's first visit to consult Dr. Collins.