# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-WC-00412-COA

**FRANCES JONES**                                               **APPELLANT**

**v.**

**UNIVERSITY OF MISSISSIPPI MEDICAL**              **APPELLEES**
**CENTER AND MISSISSIPPI INSTITUTIONS OF**
**HIGHER LEARNING**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2020 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | FRANCES JONES (PRO SE) |
| ATTORNEYS FOR APPELLEES: | COURTNEY TITUS DAVIS |
| | JUSTIN DREWERY HASLEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 01/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     This is a workers' compensation matter involving Frances Jones, a respiratory therapist employed by the University of Mississippi Medical Center. She suffered a work-related injury to her back, neck, and wrist on July 24, 2016, when a chair at work began to collapse on her. She was able to catch herself and did not fall to the floor. Her employer and its insurance carrier (collectively, UMMC) admitted the compensability of the injury. A dispute arose, however, about the extent of disability resulting from the work injury.

¶2.     Following a hearing, an administrative judge (AJ) entered an order finding that Jones did not sustain any permanent disability due to her work injury and that Jones did not require

any further treatment for her work injury. Jones appealed the AJ's decision to the Mississippi Workers' Compensation Commission (Commission). The Commission entered an order on March 24, 2020, adopting and affirming the AJ's order.

¶3.     Jones appeals pro se. She asserts that the AJ's decision, adopted by the Commission, is not supported by substantial evidence and that the AJ and the Commission committed reversible error in considering medical evidence obtained from Jones's treating physician through an alleged ex parte contact between UMMC's lawyer and Jones's treating physician.

¶4.     For the reasons stated below, we find that the Commission's order affirming and adopting the AJ's order in full is supported by substantial evidence[1] and that the AJ and the Commission did not err in considering all of the available medical evidence in reaching this decision. We therefore affirm the Commission's order adopting the AJ's determination that Jones did not sustain any permanent disability as a result of her work injury.

### PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

¶5.     Frances Jones was employed at UMMC as a respiratory therapist. On July 24, 2016, Jones reported to UMMC that she had suffered an injury to her neck, back, and left wrist as a result of a near fall at work on that same day. A petition to controvert was filed by Jones's

---

[1] "Because the Commission did not make its own findings of fact but instead affirmed and adopted the AJ's order, we examine the AJ's findings of fact in determining whether the Commission's actions were based on substantial evidence." *Sims v. Delta Fuel*, No. 2019-WC-00244-COA, 2020 WL 1271179, at *3, n.1 (Miss. Ct. App. Mar. 17, 2020) (citing *McDowell v. Smith*, 856 So. 2d 581, 585 (¶10) (Miss. Ct. App. 2003)), *cert. denied sub nom. Sims v. Fuel*, 302 So. 3d 645 (Miss. 2020).

lawyer on May 19, 2017. UMMC filed its answer and accepted compensability for the alleged injury.

¶6. As we will address in further detail below, Jones was represented by three consecutive attorneys whose motions to withdraw representation were each granted by the AJ over the course of this matter. The AJ held a hearing on Jones's claim on June 28, 2019. Jones represented herself at that hearing, on her appeal to the Commission, and on her appeal here.

¶7. We turn now to a discussion of the facts, as addressed in the AJ's twenty-seven page opinion, and as supported by the record, Jones's testimony at the hearing before the AJ, and exhibits presented at that hearing, including, but not limited to, hundreds of pages of medical records and reports.

¶8. A little more than a week after the work injury, Jones visited Dr. Karen Bruce on August 2, 2016, complaining of back and neck pain. She reported to Dr. Bruce that she was at work on July 24, 2016, when, as she was attempting to sit down in a chair, it slid out from under her. She did not fall but reached up with her right hand and grabbed onto a desk and felt a pull in her arm and under her left chest and shoulder area. Since that time, she had pain in her left wrist, pain in her neck in the mid-line area, and pain across both sides of her lower-back area.

¶9. Following a referral from her first attorney, Jones then came under the care of Dr. Michael Patterson. On her patient intake form dated October 5, 2016, Jones noted that she had back and neck pain, as well as numbness and tingling in her right leg. She stated that on

3

July 24, 2016, she was injured at work when she slipped while getting into a chair, resulting in a rather abrupt sitting down into another chair, and she has had neck pain and back pain ever since. Dr. Patterson physically examined Jones and observed she had full range of motion of her neck during their conversation. Her thoracic and lumbar spine were nontender. Dr. Patterson noted that Jones was morbidly obese. He recommended physical therapy.

¶10. On October 26, 2016, Jones went to Dr. Bruce and reported she had been involved in a motor vehicle accident the day before (October 25, 2016), when she was rear-ended with a "hard hit" that totaled both vehicles. Jones reported she went to the emergency room at Covington County Hospital where x-rays and computerized tomography (CT) scans were performed. She complained of muscle soreness from the neck down into the back area, including her arms, shoulders, sides, and anterior left thigh.

¶11. Jones saw Dr. Patterson in December 2016, and his notes reflect that Jones told him that she had been in a car accident since her last appointment that was in early October. Jones went to physical therapy on December 27, 2016, and the physical therapist noted that Jones had not been compliant with her scheduled visits. On February 21, 2017, Jones followed up with Dr. Bruce at the Hattiesburg Clinic and reported problems with her neck and right shoulder. She said all those symptoms began after the motor vehicle accident on October 25, 2016, but she thought her pain was related to her previous work injury.

¶12. Jones underwent a functional capacity evaluation (FCE) in February 2017, as ordered by Dr. Patterson and she was found capable of light duty work. Dr. Patterson later adopted

4

the light duty restrictions on February 23, 2017, and placed Jones at maximum medical improvement (MMI) at that time.

¶13. Jones went to Dr. Phillip Blount for an employer medical examination (EME) on December 22, 2017. Dr. Blount thought the July 24, 2016 work injury as described in Jones's medical records and as Jones related to him was "of minimal trauma." Dr. Blount stated that he could not say with a reasonable degree of medical probability that Jones received any "sinister injury" or that her current symptoms were related to her July 24, 2016 work injury. He also noted that Jones had reached MMI from her July 24, 2016 work injury, and he agreed with the impairment rating from the FCE performed on February 6, 2017, that implied MMI was on that date.

¶14. Dr. Blount opined that Jones could return to her previous activity levels, including work. He found that Jones did not have any permanent disability or work restrictions because of her July 24, 2016 work injury. He did not have any additional care to recommend to Jones because of the July 24, 2016 work injury, but he did state in his report that "[t]here is much room for improvement in Ms. Jones with her body mass index, her self-coping strategies, and her education regarding her diagnosis and prognosis."

¶15. On January 22, 2018, UMMC's counsel sent to Dr. Patterson a copy of Dr. Blount's report and a questionnaire for Dr. Patterson's consideration that asked Dr. Patterson to further clarify his medical opinions. Jones was represented by her first attorney at this time, and he was listed as a "cc" recipient of this correspondence. On February 7, 2018, Dr.

5

Patterson sent the completed questionnaire to UMMC's counsel (letter report). On the same day (February 7, 2018), UMMC filed its third supplemental prehearing statement, attaching Dr. Patterson's February 7, 2018 letter report. The record reflects that Jones's lawyer was served with the supplemental information via electronic filing system.

¶16. In responding to the questionnaire, Dr. Patterson said that he reviewed Jones's medical records, chart work, imaging studies, and Dr. Blount's report of his medical examination. Dr. Patterson agreed with Dr. Blount's findings that Jones had reached MMI on February 6, 2017, although he noted that technically he had actually declared Jones at MMI on "February 23, at the date of my dictation with regards to her FCE and impairment rating," but there was no significant difference between February 6, 2017, and February 23, 2017.

¶17. Dr. Patterson opined that after her work injury, but before her motor vehicle accident, there were no conditions that would have precluded Jones from working at her prior level of work. He further opined that her injury at work was "trivial at best" and that her risk for injury was related more to "her morbid obesity and general deconditioning." Dr. Patterson stated that Jones needed no further treatment in relation to her work injury.

¶18. Shortly after Dr. Patterson provided his updated opinions and his February 7, 2018 letter report was filed in the administrative record, Jones's first lawyer moved to withdraw as her counsel. In that motion Jones's lawyer stated that his withdrawal was due to his and his client's "inability to communicate in this case" and his belief that "it would be in the best

6

interest of all for the Claimant to seek alternate counsel." The AJ granted Jones's first attorney's motion to withdraw on March 20, 2018.

¶19. On April 26, 2018, the AJ dismissed Jones's claim for failure to prosecute. Nearly seven months later, in mid-November 2018, a motion to reinstate Jones's claim was filed by Jones's second attorney. A little over a month later, Jones's second attorney moved to withdraw as her lawyer when, according to his motion, Jones notified him that she had hired a new lawyer. Jones's second attorney's motion to withdraw as counsel was granted on January 3, 2019.

¶20. UMMC's lawyer filed a motion for a protective order in late January 2019, seeking to quash or limit a Rule 30(b)(6)[2] deposition of UMMC (Jones's employer) that Jones's new (third) lawyer had requested if Jones's pending motion to reinstate her claim were granted. In its motion, UMMC summarized the status of the case, citing the supporting exhibits that were attached to its motion (and already contained in the record), as follows:

> On July 24, 2016, the claimant alleged injuries to her neck, back, and left wrist from sliding out of a chair at work. She treated conservatively with Dr. Patterson, who placed her at MMI on February 23, 2017, and limited her to light duty work. Dr. Patterson later clarified that her work injury was "trivial at best" and resulted in no permanent disability. Instead, her disability, if any, was related to an intervening motor vehicle accident. Please see attached Exhibit A. Similarly, Dr. Blount, [who performed an EME,] placed the claimant at MMI as of February 6, 2017, and stated she [(Jones)] had no formal permanent work restrictions. Please see attached Exhibit B.

Jones's third lawyer moved to withdraw as her counsel three weeks later on February 19,

---

[2] M.R.C.P. 30(b)(6).

2019. In his motion to withdraw, he stated that "a conflict has arisen between Frances Jones and [her lawyer] which cannot be resolved at this time." The AJ granted Jones's third lawyer's motion to withdraw on February 25, 2019.

¶21. On May 21, 2019, Jones, representing herself, filed a "motion to quash," seeking to exclude Dr. Patterson's February 7, 2018 letter report responding to the questionnaire that UMMC's lawyer sent to him. Jones asserted that it should be "quashed" because she, as "the claimant, did not authorize EX PARTE with my treating physician Doctor Michael Patterson."

¶22. Jones's claim was set to be heard by the AJ on June 9, 2019, but was continued until June 28, 2019. At the beginning of the June 28 hearing, the AJ noted that nine exhibits had been marked and would be admitted into evidence. Exhibit 3 consisted of the medical records and reports received from Dr. Patterson, including Dr. Patterson's February 7, 2018 letter report. The AJ asked Jones if she "had any comments or statements regarding these nine exhibits." Jones commented on other exhibits, but Jones made no comment or objection to Exhibit 3, although it contained Dr. Patterson's February 7, 2018 letter report that was the subject of Jones's motion to quash filed on May 21, 2019. Jones did not seek a ruling on her motion to quash at the hearing or mention in any way her assertions relating to Dr. Patterson's February 7, 2018 letter report made in that motion.

¶23. The hearing proceeded. Jones was questioned by the AJ and then UMMC's lawyer. As reflected in the hearing transcript and the AJ's review of Jones's testimony in the

8

opinion, Jones testified about the circumstances of her July 24, 2016 work injury, and she testified that she called her supervisor to report the incident, and decided she did not need to go to the emergency room.

¶24.    Two days after the work accident, on July 26, 2016, Jones had a wellness visit with her family doctor, Dr. Bruce. She did not mention the work accident to Dr. Bruce at that visit.

¶25.    On August 2, 2016, Jones sought medical attention for the work accident. She saw Dr. Bruce and told her about the accident. Dr. Bruce ordered x-rays of her back, neck, and wrist and prescribed an anti-inflammatory medication. Jones testified that Dr. Bruce suspected a sciatic nerve problem. The x-rays were not approved and were not done. The record reflects that Dr. Bruce said Jones could return to work on August 6, 2016.

¶26.    Jones said she hired an attorney in August 2016, and he referred her to Dr. Patterson, a spine specialist at Southern Bone & Joint Specialists in Hattiesburg. She saw Dr. Patterson on October 5, 2016. He did x-rays, prescribed physical therapy, and kept her off of work. Jones had twelve to fifteen physical therapy treatments for her neck and injections in her lower back. She said her neck improved but not her lower back. She testified that the issue with her wrist had resolved, but she still had lower back and neck problems.

¶27.    A short-term disability insurance form that Jones completed on February 23, 2017, was entered into evidence at the hearing. Jones acknowledged at the hearing that in the form, she stated that she was treated at Covington County Hospital on October 25, 2016, after a

motor vehicle accident and that her medical condition included neck and shoulder pain. Jones noted on the form that the injury was work-related and that she had filed a workers' compensation claim. Jones also said in the form that the last day she was at work was "8/7/2016" and that the first day she missed work due to this medical condition was October 26, 2016.

¶28. On December 15, 2016, Jones had an appointment scheduled with Dr. Patterson. At that appointment, Dr. Patterson did not take her off work but advised light-duty work for her. When Jones saw Dr. Patterson on February 21, 2017, she complained of neck and shoulder problems that started after the motor vehicle accident. Dr. Patterson sent Jones for an FCE on February 22, 2017.

¶29. According to Jones, when Dr. Patterson released her to return to light-duty work, the hospital said there was no light-duty work for her. Jones did not apply for other work. She last saw Dr. Patterson on December 28, 2017. In 2018, Dr. Patterson released her to regular duty at work, but she had already resigned from UMMC in July 2017. She had already applied for Social Security disability benefits.

¶30. Dr. Blount evaluated Jones in December 2017 for an employer's medical evaluation. He did not relate her ongoing problems to the July 2016 work accident.

¶31. After considering Jones's testimony, the evidence received at the hearing, the pleadings in the Commission file, and the applicable law, the AJ entered an order on October 8, 2019, detailing Jones's testimony at the hearing and the medical records and reports. In

rendering her decision, the AJ found that Jones did not sustain any permanent occupational disability due to her work injury, as follows:

> The weight of the medical evidence shows that the July 2016 work injury was not a significant one, and Ms. Jones has not sustained a permanent occupational disability because of the work injury. Dr. Blount said the work accident resulted in minimal trauma, and Dr. Patterson said the injury was a trivial one. Neither Dr. Blount nor Dr. Patterson assigned any work restrictions or permanent impairment rating related to the July 2016 work injury, and both said she could return to her previous work activities. Ms. Jones has not applied for work anywhere nor attempted to return to work for the University of Mississippi Medical Center.
>
> Ms. Jones has a number of health issues, many of them problems for which Ms. Jones received treatment before the July 2016 work injury. These are personal issues and not a result of the July 2016 work injury. Dr. Patterson opined that any risk Ms. Jones may have for additional injury is due to obesity and general deconditioning. Dr. Patterson further stated she did not need further treatment for the work injury.

¶32. Jones appealed pro se from the AJ's order to the Commission on October 28, 2019. The parties submitted briefs to the Commission in support of their positions. On March 24, 2020, the Commission adopted and affirmed the AJ's order. Jones appeals pro se from the Commission's order.

**STANDARD OF REVIEW**

¶33. Our appellate review in a workers' compensation case "is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated [the claimant's] constitutional or statutory rights." *Gregg v. Natchez Trace Elec. Power Ass'n*, 64 So. 3d 473, 475 (¶8) (Miss. 2011). In particular, we review the facts on appeal "not with

11

an eye toward determining how we would resolve the factual issues were we the triers of the fact; rather, our function is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission." *S. Cent. Bell Tel. Co. v. Aden*, 474 So. 2d 584, 589 (Miss. 1985). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Choctaw Resort Dev. Enter. v. Applequist*, 161 So. 3d 1134, 1137 (¶6) (Miss. Ct. App. 2015) (internal quotation mark omitted). If there is "such substantial credible evidence, we are without authority to disturb that which the Commission has found, even though that evidence would not be sufficient to convince us were we the factfinders." *Aden*, 474 So. 2d at 589-90. On appeal, "[we] review matters of law [before the Commission] de novo, while according the interpretation of the Commission great weight and deference." *Walker Mfg. Co. v. Butler*, 740 So. 2d 315, 323 (¶39) (Miss. Ct. App. 1998) (citing *KLLM Inc. v. Fowler*, 589 So. 2d 670, 675 (Miss. 1991)).

## DISCUSSION

### I. Alleged Ex Parte Contact with Jones's Treating Physician

¶34. Jones asserts that the AJ and the Commission erred in considering Dr. Patterson's February 7, 2018 letter report in which he completed the questionnaire sent to him by UMMC's counsel. Although UMMC's counsel copied Jones's lawyer on this correspondence, Jones asserts that the questionnaire was an unauthorized ex parte contact between UMMC's counsel and Dr. Patterson. According to Jones, because she did not

12

consent to this alleged ex parte communication, Dr. Patterson's response violated the patient-physician privilege between her and Dr. Patterson and therefore should not have been considered by the AJ and the Commission. For the reasons addressed below, we find that no impermissible ex parte contact took place in this case and that the AJ and Commission did not err in considering Dr. Patterson's February 7, 2018 letter report.

### A. The Patient-Physician Privilege in the Mississippi Workers' Compensation Context

¶35. Jones relies upon the patient-physician privilege under Mississippi Rule of Evidence 503 in claiming that she can prevent disclosure of medical information obtained by "ex parte contact by an opposing party." M.R.E. 503.[3] Although Rule 503 does not apply in workers' compensation proceedings,[4] we recognize that the Mississippi courts have found that a

---

[3] Rule 503 provides that a "patient has a privilege to refuse to disclose, and to prevent others from disclosing . . . knowledge the physician . . . derived from the professional relationship with the patient; and . . . [certain] confidential communications . . . [between the patient and her physician] made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition." This privilege is waived if a party's pleadings place her "physical, mental, or emotional condition" at issue, but this exception "does not authorize ex parte contact by an opposing party." M.R.E. 503(f).

[4] The advisory committee's note to Rule 503 provides that the rule "has no application outside the context of hearing or discovery processes in the Mississippi Rules of Civil Procedure and other rules of court." *See also* M.R.E. 101 ("These rules apply to proceedings in Mississippi courts."); *Nosser v. First Am. Credit Corp.*, 814 So. 2d 178, 180 (¶7) (Miss. Ct. App. 2002) ("Proceedings before the Mississippi Workers' Compensation Commission are not judicial proceedings in which evidence may only be admitted in strict accordance with the applicable rules of evidence."); Miss. Code Ann. § 71-3-55(1) (Rev. 2011) ("In making an investigation or inquiry or conducting a hearing, the commission shall not be bound by common law or statutory rules of evidence or by technical or formal rules or procedure, except as provided by this chapter[.]").

13

patient-physician privilege does exist in the workers' compensation context. *See Cooper's Inc. of Miss. v. Long*, 224 So. 2d 866, 870 (Miss. 1969); *Nosser*, 814 So. 2d at 180 (¶7).

¶36.    Under workers' compensation law, the patient-physician privilege is removed for "[m]edical and surgical treatment as provided in this section." Miss. Code Ann. § 71-3-15(6) (Supp. 2012); *see Nosser*, 814 So. 2d at 180 (¶7).  The questionnaire that UMMC's counsel sent to Dr. Patterson sought clarification of his opinions regarding Jones's MMI, work restrictions, reasonable and necessary medical treatment, and Jones's capacity to return to work.  As such, we find that the information in Dr. Patterson's letter report responding to this questionnaire falls within the parameters of section 71-3-15(6) and would not ordinarily be privileged.

¶37.    This finding, however, does not resolve the issue before us.  In this case we must determine whether the correspondence from UMMC's counsel to Dr. Patterson that was copied to Jones's counsel constituted an impermissible ex parte communication prohibited in controverted workers' compensation cases.  *See Walker*, 740 So. 2d at 322 (¶33).

¶38.    If we so find, we must then consider whether the AJ and the Commission erred in considering Dr. Patterson's February 7, 2018 letter report, bearing in mind that "[e]xclusion of evidence is a last resort [and that] [e]very reasonable alternative means of assuring the elimination of any prejudice to the moving party and a proper sanction against the offending party should be explored before ordering exclusion." *Buskirk v. Elliott*, 856 So. 2d 255, 260 (¶11) (Miss. 2003) (quoting *McCollum v. Franklin*, 608 So. 2d 692, 694 (Miss. 1992)).  This

14

principle is particularly true in the workers' compensation context given the Commission's statutory duty to consider all the relevant evidence in fully developing the facts and conducting hearings before it so as to "best to ascertain the rights of the parties." Miss. Code Ann. § 71-3-55(1). In so doing, section 71-3-55 further provides that the Commission "shall not be bound by . . . rules of evidence or by technical or formal rules or procedure, except as provided [under the Workers' Compensation Act]." *Id.*; *see Cooper's Inc.*, 224 So. 2d at 870.

### B.    Ex Parte Contact

¶39.    In *Walker*, 740 So. 2d at 322 (¶33), this Court discussed, in the workers' compensation context, the two-prong test used in determining whether communication between a claimant's treating physician and the employer/carrier's attorney constitutes an impermissible ex parte communication. The Court stated:

> [In *Scott v. Flynt*, 704 So. 2d 998 (Miss. 1996), the Mississippi Supreme Court] clarified this State's rule pertaining to ex parte communications[, citing] . . . the two[-]prong rule from *Horner v. Rowan Companies Inc.*, 153 F.R.D. 597, 601-02 (S.D. Tex.1994) which held that (1) notice should be given to the plaintiff in order for communication to occur between the treating physician and the defense attorney, and (2) the plaintiff must acquiesce to that communication.

Thus, if these conditions are met, the communication would not be considered an impermissible ex parte contact so as to potentially taint medical evidence obtained from the communication.[5]

---

[5] The Court in *Walker* offered little discussion of the *Scott* decision, finding that it should not be applied retroactively to the facts before it. *Walker*, 740 So. 2d at 322 (¶35).

¶40. In this case, Jones was represented by counsel, and her lawyer was copied on the correspondence to Dr. Patterson that included Dr. Blount's report and the questionnaire that UMMC's counsel asked Dr. Patterson to complete. The record contains no objection from Jones's lawyer to this correspondence or the questionnaire.

¶41. Dr. Patterson provided his response to the questionnaire on February 7, 2018, and UMMC's counsel filed it of record on the same day. Jones's counsel received a copy of Dr. Patterson's letter report through the electronic filing system. There is nothing in the record indicating that Jones's lawyer sent any cross-questions to Dr. Patterson or that Jones's lawyer sought to depose Dr. Patterson after receipt of his February 7, 2018 letter report.

¶42. Under these facts, we find that Jones, through her attorney, received notice of the correspondence between UMMC's counsel and Dr. Patterson and Dr. Patterson's February 7, 2018 letter report sent in response to the questionnaire sent by UMMC's counsel. Jones, again through her attorney, "acquiesce[d] to that communication," *Walker*, 740 So. 2d at 322 (¶33), when her attorney did not object to the communication or prohibit UMMC's counsel in any way from furnishing Dr. Patterson with the questionnaire. "Acquiescence" is defined as an "agreement or consent by silence or without objection," *Webster's Unabridged Dictionary* 18 (2d ed. 2001), and that is what occurred in this case. Accordingly, we find that both prongs of the test for permissible communication between employer/carrier's lawyer and

---

The Court further found that even if *Scott* were applied, there was no reversible error because the employer suffered no prejudice by the alleged mistaken exclusion of the subject medical evidence in that case. *Id.*

16

the claimant's treating physician were met and that there is no basis for excluding Dr. Patterson's February 7, 2018 letter report on impermissible ex parte contact grounds.

¶43. Jones asserts that she, personally, was not given notice of the correspondence between UMMC's counsel and Dr. Patterson, and thus she was not put on notice of this communication, nor did she, personally, consent to the contact between UMMC's counsel and Dr. Patterson. Therefore, according to Jones, Dr. Patterson's February 7, 2018 letter report should not have been considered by the AJ or Commission.

¶44. Jones's assertions are incorrect. As we have addressed above, notice to Jones's lawyer when he was copied on the correspondence between UMMC's lawyer and Dr. Patterson was notice to Jones. UMMC's counsel was entitled to rely on Jones's lawyer's acquiesce to the communication. This determination is supported by Procedural Rule 2.9 of the Mississippi Workers' Compensation Commission, providing that "discovery [may be] had by any party in accordance with the Mississippi Rules of Civil Procedure relating to depositions and discovery (Rules 26 - 37)." Mississippi Rule of Civil Procedure 31(a) allows a party to "take the testimony of any person by . . . written questions" upon service of notice on the opposing party. Under Mississippi Rule of Civil Procedure 5(b), if a party is represented by counsel, "service shall be made upon such attorney." Jones's lawyer was essentially "served" with the correspondence between UMMC's counsel and Dr. Patterson that included the questionnaire. Jones's attorney did not object to this communication. As such, we find that Dr. Patterson's February 7, 2018 letter report in response to that

17

questionnaire was not tainted by any impermissible non-consensual ex parte communications. We therefore find no basis for Jones's contention that the AJ and the Commission erred in considering Dr. Patterson's February 7, 2018 letter report as part of the relevant medical evidence in this case.

¶45. We recognize that Jones, representing herself, moved to quash Dr. Patterson's February 7, 2018 letter report on May 21, 2019—fifteen months after the letter report was received by UMMC's lawyer and filed and just weeks before Jones's hearing before the AJ, which at that time was set for June 9, 2019. That Jones sought to avoid the ramifications of Dr. Patterson's clarifying opinions by objecting fifteen months later to the way in which they were obtained does not change our determination.

¶46. As we have found, Jones was put on notice of the correspondence between UMMC's counsel and Dr. Patterson when it was sent, with a copy to Jones's lawyer, on January 22, 2018, and—as Jones explained in her brief filed in her appeal to the Commission—Jones knew Dr. Patterson "change[d] his opinion and prognosis" in his February 7, 2018 letter report when it was filed of record the next day and her lawyer told her about it. UMMC relied on Dr. Patterson's clarifying opinions in his letter report in preparing its case, and due to Jones's acquiescence in the fifteen months since it was requested, obtained, and filed, UMMC had no reason to depose Dr. Patterson or otherwise obtain his opinions through other means.

¶47. Further, even though Jones filed a motion to quash Dr. Patterson's February 7, 2018

18

letter report before the June 2019 hearing, she made no objection *at* the hearing when it was entered into evidence. This is so even though the AJ specifically asked Jones if she had "any comments or statements" about the exhibits before they were entered into evidence, including Dr. Patterson's February 7, 2018 letter report.

¶48. Under these circumstances, we find no error in the AJ and the Commission considering the relevant evidence contained in Dr. Patterson's February 7, 2018 letter report, particularly in the light of their statutory charge to adjudicate Jones's claim "in such manner as best to ascertain the rights of the parties." Miss. Code Ann. § 71-3-55(1). As the Mississippi Supreme Court has recognized, in fulfilling this function the Commission (and the AJ) have the discretion to "relax [the] rules [of evidence] or procedural technicalities in order to more fully develop the facts." *Cooper's Inc.*, 224 So. 2d at 870 (interpreting section 71-3-55). Jones's assertions on this issue are without merit.

## II.    Hearing by "Ambush"

¶49. Jones also asserts that she was "ambush[ed]" by Dr. Patterson's February 7, 2018 letter report and that the AJ erred by allowing the hearing to continue without "deposition [of Dr. Patterson] or [his] appearance in court for cross examination of the letter." We find this contention without merit.

¶50. We observe that Jones is correct that Dr. Patterson's letter report was not furnished to UMMC's counsel and filed of record until February 8, 2018, just a day before Jones's *originally scheduled* February 9, 2018 hearing date. But Jones's hearing was continued, and

it was not conducted until nearly a year and a half later on June 28, 2019. Jones was represented by counsel through February 2019, thus allowing ample time for her counsel to request a second medical opinion, depose Dr. Patterson, or send Dr. Patterson an additional questionnaire. Likewise, when Jones began representing herself after her third lawyer's motion to withdraw representation was granted on February 25, 2019, Jones had nearly four more months to pursue one of these avenues in support of her case. The record reflects that neither Jones's lawyers, nor Jones herself, pursued any of these options.

¶51. As discussed above, Jones filed a motion to quash Dr. Patterson's February 7, 2018 letter report a few weeks before her June 2019 hearing that was set for June 9 but then again continued to June 28. But nowhere in that motion did Jones request additional time to conduct further discovery with respect to Dr. Patterson, or to obtain a second medical opinion. Nor did Jones raise any such request at the hearing before the AJ. Jones's assertions on this issue are without merit.

### III. The Commission's Decision Based on Substantial Evidence

¶52. Jones asserts that the Commission's decision, adopting in full the AJ's detailed order, was not supported by substantial evidence and thus should be reversed. In support of her assertion, Jones describes the FCE she underwent in February 2017 and points out that Dr. Patterson adopted the light-duty restrictions indicated by the FCE on February 23, 2017, and placed Jones at MMI at that time. Jones also describes medical records showing her subsequent visits to Dr. Patterson and her visit to South Central Regional Medical Center on

20

July 24, *2017*, when she underwent tests for "increased low back pain."

¶53.   We find that Jones's assertions are without merit.  We may reverse a Commission's decision only if we find "there is [no] substantial credible evidence [that] would support the factual determination made by the [AJ, as adopted by the] Commission."  *Aden*, 474 So. 2d at 589.  We find that this is certainly not the case here.  The AJ thoroughly questioned Jones at the hearing, and, as shown by the AJ's detailed order, it is plain that all the evidence before the AJ was analyzed, including the medical records and reports that Jones relies upon in asserting that the Commission's decision should be reversed.[6]  The AJ also considered the evidence Jones ignores, such as when Jones sought medical treatment after she was involved in a "hard-hit" rear-end vehicle collision on October 25, 2016—after her work injury occurred, but before her FCE was performed.

¶54.   As we have detailed above and as likewise detailed in the AJ's order, both Dr. Patterson, Jones's treating spine specialist, and the employer's expert, Dr. Blount, agreed that

---

[6] In particular, the AJ discussed Jones's FCE in detail in her order, as well as Dr. Patterson's adoption of those findings on February 23, 2017.  The AJ also considered Jones's July 24, 2017 emergency room visit to South Central Regional Medical Center, where Jones complained of "increased low back pain."  The AJ detailed this visit in her order, noting that at this visit "Jones complained of leg weakness . . . so that she could not stand but would have to sit down. She had no leg pain, but had mild low back pain off and on that was not radiating." As the AJ summarized in her order, Jones "underwent a CT lumbar spine scan because of the complaints of leg weakness . . . and was diagnosed with degenerative disc disease of the lumbosacral spine."  It is clear from the AJ's order that this evidence was considered and weighed accordingly, along with all the other testimony and evidence presented at the hearing and in the administrative record.  There is no basis for disturbing the AJ's decision, as adopted by the Commission, in this case.

21

Jones suffered no permanent disability as a result of the work injury. The AJ's order setting forth this decision, adopted by the Commission, is amply supported by substantial credible evidence.

¶55.    In conclusion, under the facts and authorities addressed above, we find that the correspondence between UMMC's counsel and Jones's treating physician was not an impermissible non-consensual ex parte communication. Jones's counsel was copied on the correspondence, and her counsel made no objection to the communication or Dr. Patterson's response as set forth in his February 7, 2018 letter report. We further find, for the reasons stated above, that the AJ and Commission did not err in considering Dr. Patterson's February 7, 2018 letter report but rather properly fulfilled their duty to "consider all relevant evidence" in developing the facts so as to "best ascertain the rights of all parties" in this case. Miss. Code Ann. § 71-3-55(1). Finally, we find that the Commission's order, affirming and adopting the AJ's order in which she found that Jones did not sustain any permanent disability as a result of her work injury, is supported by substantial credible evidence. We therefore affirm.

¶56.    **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**